United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 6, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 01-40354

———————————————

JUAN MONTELONGO SOLIS,

                              Petitioner-Appellant,

versus

JANIE COCKRELL, Director, Texas Department of Criminal Justice,
Institutional Division,

                              Respondent-Appellee.

———————————————

Appeal from the United States District Court
For the Southern District of Texas

———————————————

Before HIGGINBOTHAM, EMILIO M. GARZA, and DENNIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

    In this federal habeas petition, Juan Montelongo Solis challenges his 1994 Texas state conviction for burglary of a habitation on the ground that a juror's belief that Solis and his brothers had a reputation for breaking into houses biased the juror against him as a matter of law. We cannot agree, and affirm the district court's denial of habeas relief.

**I.**

Solis was tried in Hidalgo County, Texas in December 1994. The charge was that Solis stole carpenter's tools from the garage of Gloria Martinez in San Juan, Texas. Solis had worked for Martinez's husband, who was a carpenter, earlier in the week of the burglary. The jury convicted Solis and the trial court sentenced him to sixty years' imprisonment.

During jury selection, the judge instructed Solis to stand up so that the jurors could see him, and told the venire, "We want you to look at him because, obviously, if you're related to him or you know something about him, it would be inappropriate for you to be a juror in this case. These lawyers will be asking you about it." The prosecutor inquired if any of the jurors were from San Juan; two jurors, Cantu and Rodriguez, raised their hands and said that they were. The prosecutor asked them, in the presence of the rest of the venire, whether they knew or had ever seen Solis. The prosecutor also told the members of the venire that if there was anything they would rather answer in private than in front of the rest of the panel, "just let us know and we'll talk to you individually with the Court." Despite these inquiries, Juan Tellez did not mention whether he knew or had ever heard of Solis, and was selected as a juror.

During jury deliberations, the jury foreperson, Lopez, sent a note to the trial judge indicating that "one of the jury members lives close to the accused. We need your advice." The judge referred the jury to the portion of the charge instructing them not

to consider or discuss any matters not in evidence, including any outside information the jurors might have about any persons connected to the case. Shortly thereafter the jury returned a guilty verdict.

After his conviction, Solis filed a motion for new trial, asserting that juror Tellez, the individual the jury foreperson had referred to in her note to the trial judge, had possessed outside information about Solis that should have been revealed during voir dire and that tainted the jury verdict. The trial court held a hearing, at which Tellez testified that he lived "[n]ot more than two blocks" from Solis and that he had known of Solis and his family for "more than 20 years because [he] used to work with his dad ... harvesting fruit." Tellez also admitted at this hearing that during jury deliberations, he had informed the other jurors that "him [Solis] and some of his brothers will do that ... break into people's homes." In a confusing response, Tellez testified that, at the time he revealed this to the other jurors, he thought that perhaps Solis was not guilty of the charged offense, because "whatever [Solis] took, it was returned. And it could have been an agreement between him and the man [Mr. Martinez]." However, Tellez further stated that he ultimately decided to vote to convict based "on the evidence in this case."

Foreperson Lopez testified that Tellez's statements came after all twelve of the jurors had voted to convict, in response to her question whether anyone wanted to say anything more before she sent

-3-

out the verdict. Lopez stated that after Tellez started talking about his outside knowledge of Solis, the other jurors told him to stop talking because the information was irrelevant to the case. At that point, Lopez sent the note to the judge asking for his advice because one of the jurors lived close to Solis.

The trial court denied the motion for new trial on the basis that Solis failed to prove that "the information that was known by Juror Tellez in any way, form, or fashion [a]ffected the judgment [of guilty] in this case." A Texas court of appeals affirmed. Solis then filed his state habeas application, contending for the first time that Tellez was biased against him as a matter of law. However, the state trial court and Texas Court of Criminal Appeals erroneously concluded that Solis had raised this claim on direct appeal, and found that he was barred from presenting the claim in habeas proceedings.

In his federal habeas application, he again raised the implied bias issue. The magistrate judge to whom the case was assigned recommended denying the claim based upon a 1972 Ninth Circuit case, *Hinojos v. Black*, which held that two jurors' belief, at the time of deliberations, that the defendant had been involved in other offenses similar to the one for which he was on trial did not warrant habeas relief.[1] The district court accepted the magistrate

---

[1] *Hinojos v. Black*, 462 F.2d 621 (9th Cir. 1972). The full extent of the *Hinojos* court's discussion of its implied bias issue is as follows:

-4-

judge's report and recommendation, but granted Solis a certificate of appealability on this issue.

## II.

Both parties agree that the Texas state courts erroneously rejected the petitioner's implied bias claim on procedural grounds because they believed that Solis had raised this claim on direct appeal. We therefore review the petitioner's claim *de novo* rather than under the deferential standards provided in the Antiterrorism and Effective Death Penalty Act (AEDPA).[2]

"The Sixth Amendment requires that in all criminal

---

> The misconduct of the two jurors ... falls short of the kind of constitutional defect which would justify relief under 28 U.S.C. § 2254 in the district court.
>      There was no showing of a fraudulent concealment of bias, nor of any other exceptional circumstances that would justify deviation from the rule that affidavits of jurors cannot be used to impeach their verdict.

*Id.* at 622.

[2] *Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is *de novo* when there has been no clear adjudication on the merits."); *see* 28 U.S.C. § 2254(d) (stating deferential AEDPA standards).
     Respondent argues that the issue should be reviewed only for plain error because, although the defendant filed written objections to the magistrate judge's report and recommendation, they were not sufficiently "specific," because they were "no more than a paragraph in length" and did not take issue with the specific case law upon which the magistrate judge relied, but rather only objected to her conclusion that his Sixth Amendment rights were not violated. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (holding that a failure to file objections requires that an appellate court review a claim only for plain error). However, we find that Solis's objections were sufficient for us to apply *de novo* review.

prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. The Amendment prescribes no specific tests. The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law."[3] Solis's claim focuses only on juror Tellez's alleged implied bias – not on any actual bias. In her concurrence in *Smith v. Phillips*, Justice O'Connor reasoned that while in the vast majority of cases a hearing to determine whether the juror was actually biased against the defendant is constitutionally sufficient, "in certain instances a hearing may be inadequate for uncovering a juror's biases."[4] In those "extreme situations," a court may find the juror biased as a matter of law.[5] Examples of such circumstances "might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction."[6]

---

[3] *United States v. Wood*, 299 U.S. 123, 134 (1936) (internal quotation marks omitted).

[4] 455 U.S. 209, 222 (1982) (O'Connor, J., concurring).

[5] *Id.*

[6] *Id.* In *McDonough Power Equipment, Inc. v. Greenwood*, five Justices of the Court, writing in two separate concurrences, affirmed the continuing vitality of the implied bias doctrine. 464 U.S. 548, 556-57 (1984) (Blackmun, J., concurring) ("[I]t remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional

-6-

Although the Supreme Court has never explicitly upheld a claim of implied bias, in *Smith* Justice O'Connor suggested that the Court has implicitly done so in reversing a conviction in *Leonard v. United States*, where the petitioner had been convicted in two successive trials of forging and uttering endorsements on government checks and of transportation of a forged instrument in interstate commerce.[7] "The jury in the case tried first ... announced its guilty verdict in open court in the presence of the jury panel from which the jurors who were to try the second case ... were selected."[8] The second jury ultimately contained five jurors who had heard the verdict in the first trial.[9] In reversing the defendant's judgment of conviction, the *Leonard* Court quoted with approval the Solicitor General's statement that "[p]rospective jurors who have sat in the courtroom and heard a verdict returned against a man charged with [a] crime in a similar case immediately prior to the trial of another indictment against him should be

circumstances, that the facts are such that bias is to be inferred."); *id.* at 558 (Brennan, J., concurring) ("[A] court should recognize that [t]he bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law." (internal quotation marks omitted)).

[7] *Id.* at 223-24 (citing *Leonard v. United States*, 378 U.S. 544, 544 (1964)).

[8] *Leonard*, 378 U.S. at 544.

[9] *Id.*

automatically disqualified from serving at the second trial."[10]

Following Justice O'Connor's concurrence in *Smith* our circuit has recognized the implied bias doctrine, albeit with carefully watched limits. In *United States v. Scott*, we quoted Justice O'Connor's formulation of implied bias and went on to presume bias on the part of a juror who failed to disclose during voir dire that his brother was a deputy sheriff in the sheriff's office that had performed some of the investigation in the case.[11] In *Andrews v. Collins*, however, we cautioned that "the [Supreme] Court has not looked favorably upon attempts to impute bias to jurors," and that only "*extreme situations*" would justify such a finding.[12] There we rejected a contention that a juror's attenuated familial connection with the victim warranted a presumption that the juror was biased.[13] The victim's grandson had, prior to the victim's death, been married to the juror's daughter.[14] However, the grandson had died prior to the victim's death, and no evidence suggested that the juror even knew that he had at one time been related to the

_____

[10] *Id.*

[11] 854 F.2d 697, 699-700 (5th Cir. 1988).

[12] 21 F.3d 612, 620 (5th Cir. 1994) (internal quotation marks omitted).

[13] *Id.* at 619-21.

[14] *Id.* at 620.

victim.[15]  We "refuse[d] to impute bias" to the juror on the basis of such a "tenuous relationship" between him and the victim.[16] Similarly, in *United States v. Wilson* we held that "friendship with the victim of a defendant's alleged crime does not, standing alone, justify a finding of bias."[17]

In *United States v. Bishop* we declined to presume juror bias when a juror failed to disclose during voir dire that she had previously been convicted of a felony, because she explained that she did so only because her lawyer had told her that since she had received deferred adjudication she need not tell anyone about it, such as when applying for a job.[18]  *Bishop* considered two Ninth Circuit cases which found bias as a matter of law – in one case, a prosecution for homicide, a juror failed to reveal during voir dire that her brother had been murdered and that she had been the victim of a number of crimes,[19] and in the other the juror had failed to

---

[15] *Id.*

[16] *Id.* at 621 (internal quotation marks omitted).

[17] 116 F.3d 1066, 1087 (5th Cir. 1997).  Although an unrelated portion of *Wilson* was reversed en banc, *see United States v. Brown*, 161 F.3d 256 (5th Cir. 1998), the part of the panel opinion dealing with the implied bias issue remains intact.  *See Brown*, 161 F.3d at 257 n.1 ("[W]e vacated only Part IX C of the panel opinion by our grant of rehearing en banc.  The panel opinion as to Brown's other convictions and the convictions of all other defendants-appellants remains unaffected.").

[18] 264 F.3d 535, 554-57 (5th Cir. 2001).

[19] *Id.* at 555 (citing *Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998)).

disclose his prior assault conviction even though he had served six months in jail for it.[20]  We concluded that, unlike in those cases, no evidence suggested that the juror had intentionally kept secret her prior conviction, and there were no other "troubling circumstances such as a relationship with one of the participants."[21]

Of the handful of implied bias cases decided by our court, *Willie v. Maggio* is the most analogous to Solis's case.[22]  In *Willie*, two defendants, Willie and Vaccaro, were tried separately for the rape and murder of a Louisiana woman.[23]  Four individuals who were part of the jury venire in Vaccaro's case later became part of the jury in Willie's case.[24]  Those jurors had sat through voir dire in Vaccaro's case, and had been privy to Vaccaro's attorney's description of his client's defense, which was to pin the blame on Willie.[25]  For example, Vaccaro's counsel asked the venire,

> [L]et's say Mr. Vaccaro was ... drunk or on pills or whatever, and not himself, and ... Willie says hold her hands and [Vaccaro] doesn't know what's going on, he

---

[20] *Id.* (citing *Green v. White*, 232 F.3d 671 (9th Cir. 2000)).

[21] *Id.* at 556.

[22] 737 F.2d 1372 (5th Cir. 1984).

[23] *Id.* at 1376.

[24] *Id.* at 1377.

[25] *Id.* at 1377-78.

-10-

holds her hand[s] and Mr. Willie comes up to her and kills her. Mr. Vaccaro didn't know he was going to kill her.... [I]n that situation, would you automatically vote first degree murder on a case like that?[26]

We explained that "any venireman who sat through very much of [the voir dire], as the four jurors at issue here did, would have come away with the understanding that Vaccaro's defense would be that it was Willie" who stabbed the victim "while Vaccaro sat by, totally surprised by the events that unfolded, perhaps intoxicated or drugged or both."[27]

Contrastingly, Willie's defense at trial was that Vaccaro had killed the woman and Willie, who had been under the influence of drugs and alcohol, did not know Vaccaro was going to kill her.[28] During voir dire in Willie's case, the judge questioned each of the four jurors about whether they could decide the case based solely on the evidence presented, and each affirmed that they could.[29] In his habeas petition, Willie argued that the jurors should be presumed to have been prejudiced against him.[30]

The court began its analysis by stating that

[a] juror is presumed to be biased when he or she is apprised of such inherently prejudicial facts about the defendant that the court deems it highly unlikely that

---

[26] *Id.* at 1378.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 1378-79.

the juror can exercise independent judgment, even if the juror declares to the court that he or she will decide the case based solely on the evidence presented.[31]

It then discussed *Leonard's* holding that "prospective jurors who have heard a verdict returned against an individual prior to that person's trial on a similar charge should be automatically disqualified,"[32] and a similar case, *Rideau v. Louisiana*, in which the Supreme Court "presumed that the jury was prejudiced where a twenty-minute film of the defendant's confession was broadcast three times by a television station in the community where the crime and the trial took place."[33] The *Willie* court took from these cases that "when jurors have participated in a defendant's prior conviction, or his guilt [in regard to the crime at issue or a prior crime] appears to have been conclusively established in their presence, prejudice may be inevitable."[34]

However, we also noted in *Willie* that the Sixth Amendment does not require "'that the jurors be totally ignorant of the facts and issues involved'" in a case and that "important cases can be expected to arouse the interest of the community, and hardly any prospective juror will not have some impression or opinion about

---

[31] *Id.* at 1379.

[32] *Id.*

[33] *Id.* (citing 373 U.S. 723 (1963)).

[34] *Id.*

the merits of the case."[35]  We further reasoned that the Supreme Court has not "readily presume[d] that a juror is biased solely on the basis that he or she has been exposed to prejudicial information about the defendant outside the courtroom."[36]  Although in *Marshall v. United States* the Court reversed a defendant's drug conviction because the jurors "were exposed to various news accounts disclosing that Marshall had previously been convicted of forgery" and that "he and his wife had been arrested for other narcotics offenses,"[37] in *Murphy v. Florida* "the Court explained that Marshall's conviction was reversed in the Court's exercise of its 'supervisory power to formulate and apply proper standards for enforcement of the criminal law in the federal courts,' and not as a matter of constitutional compulsion."[38]  The *Willie* court took from *Murphy* that, "in the context of federal habeas proceedings, the fact that a juror was 'exposed to a defendant's prior conviction or to news accounts of the crime with which he is charged' does not 'presumptively deprive[] the defendant of'" his

---

[35] *Id.* (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).

[36] *Id.*

[37] *Id.* at 1380 (citing *Marshall v. United States*, 360 U.S. 310 (1959)).

[38] *Id.* (quoting *Murphy v. Florida*, 421 U.S. 794, 797 (1975)) (some internal quotation marks omitted).

-13-

constitutional rights.[39]

Applying this law we declined to presume bias on the part of the four jurors who sat through Vaccaro's voir dire, because they heard only Vaccaro's defense theory; neither the prosecutor nor Vaccaro's attorney had disclosed any facts or evidence.[40]   We reasoned, "[t]hat these jurors heard a lawyer's theory of the events that directly contradicted the theory that Willie advanced at trial is not sufficient to cause us to presume prejudice and order habeas relief."[41]

## III.

Contrary to *Willie*, Solis asks us to presume bias on the part of Tellez "solely on the basis that he [had] been exposed to prejudicial information about the defendant outside the courtroom." Although Solis attempts to draw upon *Leonard*, we find *Leonard* to have been a more extreme case, not simply where a juror heard outside rumors about the defendant's criminal behavior, but instead where several jurors actually witnessed the defendant get convicted of a case markedly similar to the one they were asked to decide. Moreover, looking to other cases embracing the implied bias

---

[39] *Id.* (quoting *Murphy*, 421 U.S. at 799).   The *Willie* court explained that the *Marshall* rule, which "afforded the defendant more protection from prejudice than is constitutionally required," is not applicable in habeas settings.   *Id.* at 1381 n.10.

[40] *Id.* at 1380-81.

[41] *Id.* at 1381.

doctrine, we find that most have done so because the juror had a close relationship with one of the important actors in the case or was otherwise emotionally involved in the case, usually because the juror was the victim of a similar crime.[42] Noting this delineation

---

[42] *Cf. United States v. Greer*, 285 F.3d 158, 172 (2d Cir. 2000) ("[W]e have cautioned that automatically presumed bias deals mainly with jurors who are related to the parties or who were victims of the alleged crime itself." (internal quotation marks omitted)). The implied bias doctrine has its place only in a narrow set of circumstances. For cases embracing the doctrine, see, for example, *Green v. White*, 232 F.3d 671 (9th Cir. 2000) (upholding a habeas petitioner's implied bias claim where a juror purposefully hid his prior conviction to get on the jury and stated, during jury deliberations, that he knew the defendant was guilty the moment he saw him, and he wished he could get a gun and kill the defendant himself); *Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) (upholding an implied bias claim where a juror, in a murder case, refused to admit during voir dire that her brother had been murdered, that certain of her relatives had been accused of committing crimes, and that she herself had been a frequent crime victim); *Hunley v. Godinez*, 975 F.2d 316 (7th Cir. 1992) (sustaining an implied bias claim after the jurors, who were in a burglary/murder case, had been deadlocked but then voted to convict after several of their rooms had been burglarized during the night at the hotel at which they were sequestered); *United States v. Scott*, 854 F.2d 697 (5th Cir. 1988) (presuming bias on the part of a juror who failed to disclose that his brother was a deputy sheriff in the sheriff's office that had performed some of the investigation in the case).

Far more numerous are those cases in which courts have refused to apply the doctrine. *See, e.g.*, *Jones v. Cooper*, 311 F.3d 306 (4th Cir. 2002) (finding no implied bias where a juror stated that several of her relatives had been subjected to arrests or jury trials; that she had gone to the store at which the crime occurred the day after the murder and robbery; that she had strong, religiously-motivated views in favor of the death penalty; and that she knew that the defendant had previously received a death sentence); *United States v. Greer*, 285 F.3d 158 (2d Cir. 2002) (rejecting a claim of implied bias because a juror was asked by an acquaintance of the defendant to lend a "sympathetic ear" to the defense and was the brother of a person to whom the defendant had distributed drugs); *United States v. Tucker*, 243 F.3d 499 (8th Cir. 2001) (rejecting the defendant's allegations that a juror was presumptively biased against him because the defendant, who had

some courts have cautioned that bias should not be inferred unless the facts underlying the alleged bias are such that they "would inherently create in a juror a substantial emotional involvement, adversely affecting impartiality."[43]  In such cases a defendant may show that a trial court's attempts to determine whether the juror is actually biased inadequately protect the defendant's right to a fair trial, because the allegedly prejudicial circumstances may be affecting the juror in ways the juror may not realize or may cause the juror to knowingly withhold the truth from the inquiring court.

We believe the hearing conducted by the trial court, which turned up no prejudice to Solis from Tellez's knowledge, was sufficient to preserve Solis's constitutional rights.  Nothing suggests that Tellez had a reason to lie to the district court or any emotional involvement that would have tainted Tellez's view of the case in ways the trial court could not discern.  Tellez's belief as to Solis's reputation did not rise to the level of a

---

previously been governor of Arkansas, had denied clemency to the juror's husband, a prison inmate); *United States v. Powell*, 226 F.3d 1181 (10th Cir. 2000) (rejecting an implied bias claim where a juror, in a kidnapping and sexual assault case, had a daughter who had been raped ten years before).

[43] *Powell*, 226 F.3d at 1188-89 (internal quotation marks omitted); *see also United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000) (explaining that courts are most likely to presume bias if "[the] case present[s] a relationship in which the potential for substantial emotional involvement, adversely affecting impartiality, is inherent" (internal quotation marks omitted)); *United States v. Frost*, 125 F.3d 346, 379 (6th Cir. 1997) (same).

structural error requiring reversal;[44] it was not an "extreme situation" beyond a probing inquiry into the presence of actual bias.

AFFIRMED.

---

[44] The remedy for a valid implied bias claim is a new trial. *See Dyer v. Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998) ("The presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice. Like a judge who is biased, the presence of a biased juror introduces a structural defect not subject to harmless error analysis." (citations omitted)); *Johnson v. Armontrout*, 961 F.2d 748, 756 (8th Cir. 1992) ("The presence of a biased jury is no less a fundamental structural defect than the presence of a biased judge. We find this claim outside the gamut of harmless error analysis." (citation omitted)). *But see Fitzgerald v. Greene*, 150 F.3d 357, 365 (4th Cir. 1998) (subjecting juror bias claims to harmless error analysis). As Justice O'Connor suggested in *Smith*, such an extreme remedy should be reserved only for "extreme situations" not amenable to actual bias analysis.