IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1481-00






B.J. FRANKLIN, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


BOWIE COUNTY





 Cochran, J., filed a dissenting opinion in which Meyers, J., joined.


O P I N I O N 



 I respectfully dissent. 

 The error that we have already found in this case was the trial court's failure to permit
further questioning of juror Spradlin concerning any actual bias she might harbor against
appellant. The constitutional question, however, is whether appellant's Sixth Amendment right
to trial by an impartial jury was violated. If Ms. Spradlin was actually biased against appellant,
he did not receive his constitutionally guaranteed right to trial by an impartial jury. But if Ms.
Spradlin did not harbor any actual bias against appellant, he did receive a constitutionally fair
trial by an impartial jury. Under well-established federal precedent, the defendant must show
that the juror had an actual bias against him before he is entitled to relief. I would therefore
follow federal precedent and abate this case to the trial court to give appellant the opportunity
to call Ms. Spradlin and question her about her relationship with C.N.T. If Ms. Spradlin was
actually biased against appellant, he has suffered constitutional harm. If she was not biased,
appellant was tried by a fair and impartial jury and he has suffered no harm at all, despite the
trial court's error.

I.


 During voir dire in this case, the State asked the jury panel if anyone knew C.N.T., the
complainant in this aggravated sexual assault of a child trial. No one said they did. Appellant
did not inquire further and he did not ask C.N.T. to enter the courtroom or stand up so the jury
panel could see her in person. After the jury was empaneled, the State called C.N.T. to the
witness stand. As soon as C.N.T. took the witness stand, Juror Spradlin passed a note to the
judge stating that she now recognized C.N.T. As we stated in our original opinion in this case:

 Apparently, Juror Spradlin had a daughter in the same girl scout troop as C.N.T.,
and Juror Spradlin was that girl scout troop's assistant leader. She had not
recognized the name, but knew C.N.T. when she saw her. The trial court judge
asked Juror Spradlin if she could listen to the evidence in the case and base her
judgment just on what she heard from the stand. Juror Spradlin stated that she
could. (1) 


Appellant's counsel immediately moved for a mistrial. The trial judge refused that request,
stating: "I think it was obvious from seeing her that she had no idea who this witness was until
she saw her come into the courtroom." Appellant then requested an opportunity to question
Ms. Spradlin further about her relationship with C.N.T. Again the trial judge refused: "I'm not
going to permit that because you had ample opportunity on voir dire." The State argued that
appellant had failed to show any harm because there was no indication that Juror Spradlin would
be unfair or partial. Appellant objected again, observing that "[t]he reason that there is no
evidence of any potential biases, of course, the Court is preventing me from further developing
that testimony from that particular juror once that relationship has been established." 
Appellant's counsel then set out on the record the questions he would have asked Juror
Spradlin about her relationship with C.N.T. had he been permitted to do so. These were all
appropriate questions and appellant should have been allowed to ask them.

 The trial court erred in refusing to allow further inquiry into the juror's potential bias. 
In our prior opinion, we held that appellant properly preserved this error and remanded the case
for the court of appeals to conduct a harm analysis. (2) On remand, the court of appeals held that
this was constitutional error because appellant was deprived of his right to "question the
members of the jury panel in order to intelligently exercise peremptory challenges." (3) This
seems a peculiar conclusion because appellant could have questioned Ms. Spradlin during voir
dire until the cows came home, but until Ms. Spradlin saw C.N.T. she would not have realized
that she knew her. 

 It seems to me that the problem here has nothing to do with voir dire and nothing to do
with the exercise of peremptory challenges. Voir dire was over when this problem surfaced. 
Instead, the issue is whether a biased juror sat on appellant's jury. This scenario and the
constitutional issue it presents are very familiar to the federal courts. Therefore, I think that
we should follow federal precedent in dealing with this constitutional issue. Under federal
precedent, the proper remedy is to remand the case to the trial court for a hearing. (4)

II.


 The Sixth Amendment guarantees the accused the right to a trial by an impartial jury. (5) 
This right to trial by an impartial jury lies at the heart of due process. (6) The Constitution
provides no specific tests of juror partiality or bias, but the United States Supreme Court has
stated that "[t]he bias of a juror may be actual or implied; that is, it may be bias in fact or bias
conclusively presumed as [a] matter of law." (7)

 Although there are a few exceptional circumstances in which "implied bias" may be
presumed as a matter of law, (8) normally a party seeking a new trial (or, as in this case, a
mistrial) must show a juror's "actual bias." (9) 

 To obtain a new trial for actual juror bias, a defendant must show: 1) that a juror failed
to answer honestly a material question during voir dire; and 2) that a correct response would
have provided the basis for a challenge for cause. (10) This is the test applied when a juror
intentionally conceals information. (11) The Supreme Court explained in McDonough that "[t]he
motives for concealing information may vary, but only those reasons that affect a juror's
impartiality can truly be said to affect the fairness of a trial." (12) Inaccurate responses to voir
dire questions are excused when caused by inattention or when a query does not elicit the
specific information relevant to the juror's possible disqualification. (13) Even when a juror's
failure to disclose information on voir dire is dishonest rather than mistaken, "his behavior is
not a basis for reversal unless the dishonesty appears to be rooted in bias or prejudice." (14)

 Under the Supreme Court's constitutional standard:

 A juror ... need not be disqualified merely because he or she knows the
defendant or has some knowledge about the case. A defendant must show that
the knowledge somehow impaired-or had the ineluctable tendency to impair-the
juror's neutrality. That is to say, the defendant must show actual, or at least
likely, prejudice stemming from the participation of the allegedly biased juror. (15)


The mere fact that a juror was the former "paramour" of the defendant's son was insufficient
to show actual prejudice; (16) the fact that a juror was the friend of the murder victim was
insufficient; (17) the fact that one defendant and a juror had previously had a disagreement over
a bill was insufficient; (18) and the fact that a juror, although questioned repeatedly, failed to
disclose that she had been previously convicted of theft and sat on a trial involving federal
income tax fraud, was insufficient. (19) There are a plethora of federal cases addressing precisely
the constitutional issue presented in this case. It seems to me that we should consult those
cases before we reverse appellant's conviction on this constitutional basis. As the Supreme
Court stated in McDonough:

 To invalidate the result of a three-week trial because of a juror's mistaken,
though honest response to a question, is to insist on something closer to
perfection than our judicial system can be expected to give. A trial represents
an important investment of private and social resources, and it ill serves the
important end of finality to wipe the slate clean simply to recreate the
peremptory challenge process because counsel lacked an item of information
which objectively he should have obtained from a juror on voir dire
examination. (20)


 In this case, there is not a scintilla of suggestion that Ms. Spradlin "withheld" any
information. Indeed, the moment she saw C.N.T. in person, she immediately informed the trial
judge that she did, in fact, recognize the child, though she had not recognized the name. Surely
this is a common phenomenon to us all. To guard against this problem, appellant could easily
have asked C.N.T. and all of the witnesses to stand up in the courtroom and then ask the venire
members if they recognized any of them. This is frequently done in Texas courtrooms. 
Appellant should not be punished for his failure to perform this simple voir dire exercise, (21) but
neither should he obtain a reversal for that failure. As it stands, there is nothing in this record
to suggest that Ms. Spradlin was biased against appellant. The problem in this case is that
appellant was prevented from even attempting to explore or establish bias.

 Appellant, the court of appeals, and the majority cast this constitutional claim as one
involving the right to make intelligent peremptory challenges. But there is no federal
constitutional right to peremptory challenges. (22) I believe that when a defendant relies upon the
United States Constitution for his claim, we should address his claim under the United States
Constitution and the controlling precedent of the United States Supreme Court. (23)

 Furthermore, there are numerous federal cases, including McDonough itself,
addressing the appropriate remedy when the trial court has not provided an adequate forum to
develop the factual basis for the claim of a biased juror. That remedy is to remand the case to
the trial court to give the defendant an opportunity to establish his claim of a biased juror. (24) 
I, like the Supreme Court, believe that a trial represents an important investment of private and
social resources, an investment that is the main event, not a try-out on the road to appellate
speculation about possible juror bias. Appellant is entitled to show actual bias, but we ought
not assume it without support in the record.

 I respectfully dissent to the majority's failure to follow federal constitutional law and
procedure on appellant's federal constitutional claim.

Cochran, J.

Filed: June 30, 2004.

Publish
1. Franklin v. State, 12 S.W.3d 473, 476 (Tex. Crim. App. 2000).
2. Id. at 479.
3. Franklin v. State, 23 S.W.3d 81, 83 (Tex. App.-Texarkana 2000).
4. Smith v. Phillips, 455 U.S. 209, 215 (1982) ("[t]his Court has long held that the remedy for
allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual
bias"); McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 551-52 & n.3 (1984) (stating
that proper resolution of whether juror's "unrevealed information" during voir dire showed juror bias is
to remand case to district court to conduct a hearing to decide that factual question); Remmer v.
United States, 347 U.S. 227, 230 (1954) (remanding case to district court to determine whether
attempted bribery of juror influenced him and made him prejudiced); Solis v. Cockrell, 342 F.3d 392,
399 (5th Cir. 2003) (post-conviction hearing conducted by trial court which turned up no prejudice
toward defendant by juror protected habeas applicant's right to trial by impartial jury); Tinsley v. Borg,
895 F.2d 520, 524-26 (9th Cir. 1990) (citing Phillips and noting that post-trial hearing is appropriate
mechanism to resolve constitutional claims of juror bias when juror fails to disclose material information
during voir dire).
5. U.S. Const. amend. VI ("
[i]n all criminal prosecutions, the accused shall enjoy the right to a
speedy and public trial, by an impartial jury").
6. Irvin v. Dowd, 366 U.S. 717, 722 (1961) ("the right to jury trial guarantees to the criminally
accused a fair trial by a panel of impartial, 'indifferent' jurors").
7. United States v. Wood, 299 U.S. 123, 134 (1936).
8. See Smith v. Phillips, 455 U.S. 209, 222-23 (1982) (O'Connor, J., concurring) (noting that
"there are some extreme situations that would justify a finding of implied bias," including "a revelation
that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of
the participants in the trial or the criminal transaction, or that the juror was a witness or somehow
involved in the criminal transaction"); see also Solis v. Cockrell, 342 F.3d 392, 395-98 (5th Cir.
2003) (citing cases and analyzing doctrine of "implied" or "presumed" juror bias when juror fails to
disclose material information during voir dire; rejecting habeas applicant's claim of implied bias when
juror failed to disclose that he lived not more than two blocks from defendant, had known him and his
family for more than twenty years, and knew that defendant and his brothers "break into people's
homes"). In Solis, the Fifth Circuit noted that the Supreme Court has never explicitly upheld a claim of
implied bias, although it may have implicitly done so. Id. at 395 (discussing Leonard v. United States,
378 U.S. 544 (1964)).
9. Appellant's argument suggests that this is an instance of "implied" or "presumed" juror bias. 
He states: "Except immediate family members, one could hardly imagine a stronger relationship than
that which exists between a girl scout and her troop leader." I cannot accept that premise, but even so,
the record in this case indicates that Ms. Spradlin did not have a close relationship with C.N.T. because
she did not even recognize her name. Appellant provides no legal support for his argument that being a
crime victim's assistant girl scout leader raises "implied" or "presumed" bias. 
10. McDonough, 464 U.S. at 556; United States v. Bishop, 264 F.3d 535, 554 (2001)
("moving party must demonstrate that a juror failed to answer a material voir dire question honestly, and
that a correct response would have been a valid basis for a challenge for cause"); United States v.
Wilson, 116 F.3d 1066, 1086 (5th Cir. 1997) ("[g]enerally, to obtain a new trial for jury bias, a party
must demonstrate: (1) that a juror failed to answer honestly a material question during voir dire, and (2)
that a correct response would have provided the basis for a successful challenge for cause"); Dennis v.
Mitchell, 354 F.3d 511, 520-21 (6th Cir. 2003) (setting out McDonough test).
11. McDonough, 464 U.S. at 556; Dennis v. Mitchell, 354 F.3d at 520.
12. McDonough, 464 U.S. at 556.
13. Bishop, 264 F.3d at 555.
14. Id.
15. Neron v. Tierney, 841 F.2d 1197, 1206 (1st Cir. 1988).
16. Id. at 1203.
17. Wilson, 116 F.3d at 1086; see also Montoya v. Scott, 65 F.3d 405, 420 (5th Cir. 1995)
(juror who did not respond to voir dire question of whether she knew victim when in fact she did may
have been honestly mistaken in her response; nonetheless, mere friendship with victim does not, by
itself, constitute juror bias). As the Fifth Circuit noted in Montoya:

 We have found no published opinion upholding a challenge for cause based on a
venireperson's mere acquaintance with the victim of the crime for which the defendant
has been charged, and the Texas Court of Criminal Appeals has squarely held that the
mere fact that a juror knows the victim is not sufficient basis for disqualification. See
Anderson v. State, 633 S.W.2d 851, 853 (Tex. Crim. App. 1982). In Anderson, the
juror was a school teacher at the school where the rape at issue occurred and knew the
victim, who attended the school, and several of the State's witnesses, but did not know
the defendant. The court stated: "Although such knowledge [of the victim] may be the
source of an existing bias, 'the mere fact that a juror knows, or is a neighbor, or an
intimate acquaintance of, and on friendly relations with, one of the parties to a suit, is
not sufficient basis for disqualification.'"

65 F.3d at 419-20. 
18. United States v. Uribe, 890 F.2d 554, 561 (1st Cir. 1989).
19. Bishop, 264 F.3d at 556 (juror offered a "plausible explanation for her failure to answer the
juror questionnaire and voir dire inquiries regarding her criminal history accurately").
20. McDonough, 464 U.S. at 555.
21. But see Wilson, 116 F.3d at 1086 (defendant bears burden of proving that the belated
discovery of juror's friendship with the victim was not due to lack of diligence on his part); cf. Neron,
841 F.2d at 1202 n.6 (noting that allegations of juror bias "which are frivolous--that is, entirely
conclusory or conjectural, contradicted by the record, inherently incredible, patently false, or obviously
inconsequential--do not trigger any duty of inquiry [by the trial court] and do not require that a hearing
be held").
22. Georgia v. McCollum, 505 U.S. 42, 57 (1992) ("it is important to recall that peremptory
challenges are not constitutionally protected fundamental rights; rather, they are but one state-created
means to the constitutional end of an impartial jury and a fair trial. This Court repeatedly has stated that
the right to a peremptory challenge may be withheld altogether without impairing the constitutional
guarantee of an impartial jury and a fair trial"); Frazier v. United States, 335 U.S. 497, 505 (1948)
(stating that the right to peremptory challenges "is given in aid of the party's interest to secure a fair and
impartial jury, not for creating ground to claim partiality which but for its exercise would not exist").
23. In Jones v. State, 596 S.W.2d 134 (Tex. Crim. App. 1980), this Court did not address any
question of constitutional error or harm because the defendant failed to ask any specific questions
designed to elicit the fact that the juror had once been employed as a jail guard. Id. at 136. Because
the defendant did not show that the juror intentionally withheld material information, he failed to show
any "misconduct that would warrant reversal." Id. at 137. 
24. See supra note 4.