# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10290

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2018

Lyle W. Cayce
Clerk

JOHN URANGA, III,

Petitioner-Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, HAYNES, and COSTA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

John Uranga, III, Texas prisoner # 1500003, appeals the district court's denial of his 28 U.S.C. § 2254 application for a writ of habeas corpus. Uranga was convicted by a jury of possession of methamphetamine in an amount greater than one gram but less than four grams.[1] During the punishment phase of trial, the jury determined that Uranga was a habitual felony offender and sentenced him to life imprisonment.[2] A judge of this court granted Uranga a certificate of appealability ("COA") on the following issues: (1) whether the postjudgment motion Uranga filed after the district court's denial of his § 2254

---

[1] *Uranga v. State*, 330 S.W.3d 301, 302 (Tex. Crim. App. 2010).

[2] *Id.* at 303.

No. 15-10290

application was not an unauthorized successive § 2254 application; (2) whether the postjudgment motion was timely filed for purposes of tolling the time period for filing a notice of appeal; and (3) whether Uranga is entitled to § 2254 relief on his claim of implied juror bias during the punishment phase of his trial.

Under our COA grant, we have jurisdiction to address whether Uranga's postjudgment motion was an unauthorized successive § 2254 application and will do so here, as it affects our appellate jurisdiction. [3] Specifically, if Uranga's postjudgment motion was a timely filed motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), then the deadline for filing a notice of appeal would be tolled until the entry of the order disposing of that motion. [4] However, a purported Rule 59(e) motion that is, in fact, a second or successive § 2254 application is subject to the restrictions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") and would not toll the time for filing a notice of appeal. [5]

In *Gonzalez v. Crosby*, the Supreme Court instructed that a postjudgment motion should be treated as a successive § 2254 application if the motion adds a new ground for relief or attacks the district court's previous resolution of a claim on the merits. [6] Conversely, we should not treat a postjudgment motion as a successive § 2254 application when the motion asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural

---

[3] *See United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000).

[4] *See* FED. R. APP. P. 4(a)(4)(A)(iv).

[5] *See Williams v. Thaler*, 602 F.3d 291, 303-04 (5th Cir. 2010).

[6] 545 U.S. 524, 532 (2005). Although *Gonzalez* involved a postjudgent motion under Rule 60(b), we have held *Gonzalez* applicable to postjudgment motions under Rule 59(e). *See Williams*, 602 F.3d at 303.

2

## No. 15-10290

default, or statute-of-limitations bar"[7] or when the motion "attacks . . . some defect in the integrity of the federal habeas proceedings."[8]

In his postjudgment motion, which Uranga purported to file pursuant to Rule 59(e), Uranga sought reconsideration of the denial of his prejudgment motion for leave to amend his § 2254 application. He also contended that the district court denied his § 2254 application prematurely by failing to first explicitly consider and rule on his motion for leave to amend. Thus, Uranga did not seek to add a new ground for relief, nor did he attack the district court's previous resolution of a claim on the merits. Rather, he asserted that a previous ruling (the denial of his motion for leave to amend) which precluded a merits determination was in error. Moreover, his argument that the district court denied his § 2254 application prematurely was, in effect, an attack on an alleged defect in the integrity of the § 2254 proceeding. Consequently, under *Gonzalez*, Uranga's purported Rule 59(e) motion was not an unauthorized successive § 2254 application and, if timely filed (the second issue upon which COA was granted), would toll the deadline for filing a notice of appeal until the entry of the order disposing of the motion.[9]

A motion to alter or amend a judgment under Rule 59(e) must be filed within 28 days of the entry of the judgment.[10] The district court's judgment denying Uranga's § 2254 application was entered on March 11, 2014; therefore, the deadline for filing a Rule 59(e) motion was April 8, 2014. The district court, however, did not receive Uranga's motion until April 17, 2014. Uranga asserts that his motion nevertheless was filed timely under the prison mailbox rule.

---

[7] *Gonzalez*, 545 U.S. at 532 n.4.

[8] *Id.* at 532 (footnote omitted).

[9] *See* FED. R. APP. P. 4(a)(4)(A)(iv).

[10] FED. R. CIV. P. 59(e).

No. 15-10290

In *Houston v. Lack*, the Supreme Court held that a *pro se* prisoner's notice of appeal under Federal Rule of Appellate Procedure 4(a)(1) is deemed filed as of the date the notice is delivered to prison officials for mailing.[11]  We have extended the prison mailbox rule to other submissions of *pro se* inmates, including Rule 59(e) motions.[12]  *Houston's* holding was eventually codified in Federal Rule of Appellate Procedure 4(c) and Rule 3(d) of the Rules Governing § 2254 cases.

Uranga contends that his Rule 59(e) motion was timely filed because it was delivered to prison officials for mailing on April 7, 2014, as stated in the motion's certificate of service.  However, Uranga himself did not deliver the motion to prison officials.  Another inmate named Gordon Ray Simmonds, who was assisting Uranga with his § 2254 application, delivered the motion to prison officials for mailing.  Simmonds also signed Uranga's name to the Rule 59(e) motion.  Although the prison mailroom logs reflected that the mailroom did not receive the motion until April 14, 2014, Uranga submitted the declaration of Simmonds who explained the reasons for the delay.

The district court did not reject Simmonds' explanation for the delay in the mailroom's receipt of the Rule 59(e) motion.  Instead, the district court reasoned that the motion would have been timely had Uranga *himself* signed and delivered the motion to prison officials for mailing on or before April 8, 2014.  The district court determined that because Simmonds was a non-party and not a licensed attorney, he lacked authority under Federal Rule of Civil Procedure 11(a)[13] to sign the motion on Uranga's behalf.  The district court

---

[11]  487 U.S. 266, 275 (1988).

[12] *See Brown v. Taylor*, 829 F.3d 365, 368 (5th Cir. 2016); *cf.* FED. R. APP. P. 25(a)(2)(C) (adopting prison mailbox rule for inmate filings in federal appellate courts).

[13] Federal Rule of Civil Procedure 11(a) provides that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented."

4

further determined that the prison mailbox rule does not apply when a prisoner gives his motion to another prisoner to deliver to prison officials for mailing. We disagree.

First, in determining that Simmonds lacked authority to sign Uranga's motion, the district court failed to note the specific rules applicable to § 2254 proceedings allowing someone other than the prisoner or a licensed attorney to sign a habeas petition under certain circumstances. Rule 2(c)(5) of the Rules Governing § 2254 cases provides that the habeas petition must "be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." That statute, in turn, provides that "[a]n application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended *or by someone acting in his behalf*."[14]

We have noted that the authority under § 2242 of a so-called "next friend" to apply for a writ of habeas corpus on behalf of another may be established when the habeas application explains "(1) why the detained person did not sign and verify the petition and (2) the relationship and interest of the would be 'next friend.'"[15] In this matter, Uranga submitted Simmonds' declaration to the district court in which Simmonds gave a detailed account of why it was necessary for him to sign Uranga's Rule 59(e) motion and his relationship with Uranga. Specifically, Simmonds explained that he and Uranga were unable to meet due to a lockdown situation at the prison so in light of the impending deadline for filing a Rule 59(e) motion, Simmonds signed Uranga's name to the Rule 59(e) motion. We find that these facts constitute

---

[14] 28 U.S.C. § 2242 (emphasis added). Although this matter does not involve the initial § 2254 application, we believe this statute may be applied to any filing made on behalf of a prisoner in a § 2254 proceeding, including a postjudgment motion under Rule 59(e).

[15] *Weber v. Garza*, 570 F.2d 511, 513-14 (5th Cir. 1978).

No. 15-10290

an adequate explanation of the necessity for resorting to the "next friend" device and that Simmonds had authority under § 2242 to sign Uranga's Rule 59(e) motion.[16]

Second, in determining whether the prison mailbox rule applies, the relevant question for our consideration is whether the declaration of transmission to prison officials contemplated by the rules and our precedents requires the inmate himself to be the one to transmit the document to the prison officials responsible for the internal inmate mailing system. The Supreme Court has focused on the date the prison officials received the document.[17] We find no requirement of personal delivery by the prisoner himself and note that at least one other circuit evaluated the date based upon when the document was handed to the appropriate prison officials regardless of who did the handling.[18] We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.

Therefore, Uranga's Rule 59(e) motion, which Simmonds delivered on Uranga's behalf to prison officials for mailing on April 7, 2014, was timely filed and tolled the deadline for filing a notice of appeal until the entry of the order

---

[16] *See Warren v. Cardwell*, 621 F.2d 319, 321 n.1 (9th Cir. 1980) (determining that resort to "next friend" device was appropriate when petitioner "could not sign and verify the petition because prison was 'locked down'" and circumstances were "urgent").

[17] *Houston*, 487 U.S. at 275.

[18] *See Hernandez v. Spearman*, 764 F.3d 1071, 1074 (9th Cir. 2014). The respondent argues that Rule 3(d) of the Rules Governing § 2254 cases restricts application of the prison mailbox rule to filings made personally by the inmate-petitioner. Rule 3(d) provides: "A paper filed by an inmate in an institution is timely if deposited in the institution's internal mailing system on or before the last day of filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule." The respondent submits that because the first sentence of the rule states "an inmate," but the second sentence states "the inmate," then the prison mailbox rule applies only when the petitioner himself delivers his pleading to prison authorities. We are not persuaded. Moreover, we note that Federal Rule of Appellate Procedure 4(c), which also codified *Houston*'s holding, uses "an inmate" throughout the rule.

disposing of the motion.[19]  There is no dispute that Uranga's notice of appeal was filed timely from the entry of the order denying his motion.

The last issue upon which COA was granted involves Uranga's claim that he was denied an impartial jury during the punishment phase of trial because one of the jurors was impliedly biased against him.[20]  During the punishment phase, the State introduced evidence of Uranga's two prior felony convictions and several unadjudicated offenses.[21]  Evidence revealed that Uranga had driven his car onto someone's lawn to elude police.  This extraneous offense was captured by the video camera in the police vehicle that was chasing Uranga. [22]  After the videotape was played to the jury, one of the jurors realized that it was his lawn that had been damaged by Uranga's car during the chase and "reported his surprising discovery to the trial court."[23]  The trial court conducted a hearing, questioning the juror outside the presence of the remaining jurors regarding the incident.[24]  The juror indicated that he had not known who damaged his lawn until he saw the video, but that this information would not influence him in any way.[25]

---

[19] *See* FED. R. APP. P.  4(a)(4)(A)(iv).

[20] Uranga also argues that the juror in question was biased against him during the entire trial, and not just during the punishment phase.  He asserts that the juror was actually his neighbor, held animosity against him, and had made reports to the police alleging that Uranga was selling drugs out of his house.  However, this issue is beyond the scope of our COA grant.  By asserting this claim in his opening brief, Uranga, in essence, is seeking a rehearing of this Court's ruling on his motion for a COA.  A petition for rehearing must be filed within 14 days of this Court's ruling, and Uranga's opening brief was filed more than five months later.  *See* FED. R. APP. P. 40(a)(1).  Therefore, we do not consider this claim.

[21] *Uranga*, 330 S.W.3d at 302.

[22] *Id.*  The videotape of the car chase "suggest[ed] that Uranga [had] committed the crimes of evading arrest and criminal mischief" under Texas law.  *See Uranga v. State*, 247 S.W.3d 375, 377 (Tex. App.—Texarkana 2008) (citations omitted).

[23] *Uranga*, 247 S.W.3d at 377.

[24] *Uranga*, 330 S.W.3d at 302.

[25] *Id.* at 302-03.

Uranga then moved for a mistrial, arguing that because the juror's property was damaged by his actions, "it would have to affect [the juror] in [determining] punishment."[26] The trial court denied Uranga's request for a mistrial.[27] On appeal, Uranga argued that the Texas Court of Criminal Appeals had adopted the "implied bias" doctrine in limited circumstances and that such bias should be imputed to the juror in his case.[28] The Texas Court of Criminal Appeals, however, held that "[n]either the federal nor the state constitution has been held to require an 'implied bias' doctrine."[29] Instead, the court "held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."[30] The court further held that the hearing conducted by the trial court on the issue of actual bias in this case was appropriate and adequate and that "[t]here was no requirement of a mistrial on a theory that bias must be implied to the juror."[31] The court consequently affirmed Uranga's conviction and sentence.[32]

Under 28 U.S.C. § 2254(d)(1), habeas relief may not be granted on a claim that was adjudicated on the merits by a state court "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." However, when a state court fails to adjudicate a claim on the merits, this deferential standard of review is inapplicable, and "the federal courts must instead conduct a

---

[26] *Id.* at 303.

[27] *Id.*

[28] *Id.* at 306.

[29] *Id.* at 304.

[30] *Id.* at 306 (quoting *Smith v. Phillips*, 455 U.S. 209, 215 (1982)) (internal quotation marks omitted).

[31] *Id.*

[32] *Id.* at 307.

plenary review."[33]   In this case, the state court never adjudicated Uranga's "implied bias" claim on the merits because the state court determined that neither the federal nor state constitution provided for such a claim.[34] Therefore, no deference is owed to the state court's judgment, and our review is plenary.[35]

The respondent argues that the doctrine of implied juror bias is not clearly established federal law and that this Court would have to create, in violation of *Teague v. Lane*,[36] a new constitutional rule in order to grant relief in this case.  In *Brooks v. Dretke*, however, we rejected these same arguments, and we find it controlling.[37]

The Sixth Amendment guarantees in all criminal prosecutions that the accused receive a trial by an impartial jury.[38]  Although the Sixth Amendment does not prescribe any specific tests, "[t]he bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law."[39]  "The determination of implied bias is an objective legal judgment made as a matter of law and is not controlled by sincere and credible

---

[33] *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011) (footnote omitted).

[34] *See Uranga*, 330 S.W.3d at 308 (Price, J., dissenting) ("Without fanfare, the Court today announces that there is no such thing as the Sixth Amendment doctrine of implied bias.").

[35] The magistrate judge and district court determined that the state court's judgment was entitled to deference under the AEDPA because the state court had made an "implied legal conclusion" that the information discovered by the juror was not sufficient to produce implied bias.  As described above, however, the state court made no such conclusion, implied or otherwise.  Consequently, we conclude that the district court erred in extending any deference to the state court's judgment with respect to Uranga's implied bias claim.

[36] 489 U.S. 288 (1989).

[37] 444 F.3d 328, 329-33 (5th Cir. 2006) (on denial of petition for rehearing en banc). Contrary to Appellee's contentions, *Brooks* does not conflict with our decision in *Andrews v. Collins*, 21 F.3d 612 (5th Cir. 1994).  In *Andrews*, after noting the Supreme Court jurisprudence relating to the doctrine of implied juror bias, we went on to analyze the defendant's claim of implied juror bias, but "refused to impute bias to [the] juror" based on the specific facts presented in that case.  21 F.3d at 620-21.

[38] *See Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003).

[39] *Id.* (internal quotation marks and footnote omitted).

assurances by the juror that he can be fair."[40]  However, it is only in "extreme situations" that implied juror bias may be found.[41]  "Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction."[42]  Bias should not be inferred "unless the facts underlying the alleged bias are such that they would inherently create in a juror a substantial emotional involvement, adversely affecting impartiality."[43]

Uranga contends that his case falls within one of the "extreme situations" that implied juror bias may be found.  Specifically, Uranga asserts that the juror was a "victim" of the damage he caused during a car chase with the police, which the jury was allowed to consider during the punishment phase.  We agree.

Under Texas law, the State is allowed, during the punishment phase of a criminal trial, to offer any evidence the trial court deems relevant to sentencing, including evidence of unadjudicated, extraneous offenses committed by the defendant.[44]  The videotape offered by the State during the punishment phase of Uranga's trial clearly showed that Uranga had damaged the juror's lawn during the car chase.  Although the resulting property damage may have been minimal, the damage nonetheless was personal to the juror, as it affected the premises of his home.  Moreover, the juror was unaware of how the damage had been caused and learned, for the first time, upon viewing the videotape during the punishment phase of trial that Uranga was the

---

[40] *Brooks v. Dretke*, 418 F.3d 430, 434 (5th Cir. 2005) (footnote omitted).

[41] *Andrews*, 21 F.3d at 620 (internal quotation marks and citations omitted).

[42] *Id.* (internal quotation marks and citations omitted).

[43] *Solis*, 342 F.3d at 399 (internal quotation marks and footnote omitted).

[44] *See* TEX. CODE CRIM. PROC. ART. 37.07, § 3(a)(1).

No. 15-10290

perpetrator of the damage.  We believe that these particular facts "inherently create[d] in [the] juror a substantial emotional involvement, adversely affecting [his] impartiality" toward Uranga.[45]  We conclude that this case presents one of those "extreme situations" in which we are justified in finding a violation of the Sixth Amendment based on implied juror bias.  Consequently, although Uranga's conviction for possession of methamphetamine must stand, his sentence of life imprisonment cannot, at this point.

Based on the foregoing, we REVERSE the judgment of the district court denying Uranga's § 2254 application and REMAND this case to the district court.  We further direct that a writ of habeas corpus be issued, unless within 90 days, or such additional reasonable time as shall be allowed by the district court on application to it by the State within that time, Uranga is resentenced in accordance with Texas law in effect at the time of his crime.

REVERSED and REMANDED with instructions.

---

[45] *See Solis*, 342 F.3d at 399 (internal quotation marks and footnote omitted).