**John URANGA, III, Appellant,**

v.

**The STATE of Texas.**

**No. PD–0385–08.**

Court of Criminal Appeals of Texas.

Nov. 17, 2010.

Erika Copeland, Abilene, for appellant.

John W. Brasher, Asst. Crim. D.A., Wichita Falls, Jeffrey L. Van Horn, State's Attorney, Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

In this case, the evidence at the punishment stage of the trial revealed that the defendant had damaged a juror's property in a extraneous offense. The issues are (1) whether the doctrine of "implied bias" applies to this case and required a mistrial, and (2) if it did not, whether the trial court abused its discretion in denying a mistrial. We hold that the implied-bias doctrine does not apply and that the trial court did not abuse its discretion.

## I. Summary of Facts

A jury found the appellant guilty of felony possession of methamphetamine of more than one gram, but less than four grams. During the punishment phase of the trial (which also was tried to the jury) the State introduced evidence of two prior convictions and a host of unadjudicated offenses, including the incident in question. It took place in September of 2006 when the appellant drove his car onto someone's yard to elude police. This incident was captured in its entirety by the video camera in the police vehicle that was chasing the appellant.

When the State offered the video recording into evidence and played it for the jury, one of the jurors discovered that it was his lawn that had been damaged by the appellant's car. The court questioned the juror outside the presence of the remaining jury regarding the incident and any potential bias that may have existed as a result of the incident.

COURT: ... Yesterday when you watched the video, during the punishment phase, of the car and it went up into somebody's yard and then came back out, my understanding is that you discovered that was your yard?

JUROR: Right, yes.

COURT: And, of course, you had no way of knowing, I don't suppose, that that was going to be a part of this case or that it involved this Defendant?

JUROR: No, I didn't.[1]

COURT: So the first time you learned anything about it was when you saw his car pulling up in that yard and pulling back out on that video, right?

JUROR: Right.

COURT: Let me ask you: Have you told anybody else about it?

JUROR: No. Just you.

COURT: Is there anything about that that would affect your decision in this case or that would cause you to lean one way or the other?

JUROR: No, sir.

COURT: Was there anything torn up in your yard that might have made you mad that somebody did—somebody did something to your yard?

JUROR: The ground was moved up a little bit, but I can replace that. I'm not pressing no charges or anything like that.

COURT: Did you see the car come in there, or just saw it—

---

1. It seems that the juror had never been told the name of a suspect for the damage to his yard. *See Uranga v. State,* 247 S.W.3d 375, 377 (Tex.App.-Texarkana 2008) ("The juror thus learned [from the videotape] that Uranga had been the previously unknown person who had driven through the juror's yard ....").

JUROR: No. I just saw it on the tape.

COURT: But as far as your yard, did you know anything had happened when it happened, or did you just see it out there later?

JUROR: In the morning, when I was going to work, I saw it.

COURT: So as far as seeing anything that happened about what car came in there or a policeman chasing somebody, you didn't see anything like that?

JUROR: No. No, sir.

COURT: You had no knowledge about anything happening until the next morning when you go out and see car tracks in your yard?

JUROR: Right.

COURT: And you're telling me that the fact that that car involves this Defendant, allegedly, and was the one that was on that video in your yard, that that would not influence you one way or the other?

JUROR: No, sir.

COURT: You will not hold that against the Defendant in any way?

JUROR: No. No.

COURT: All right. One thing I'm going to say to you is: Do not let it influence you in any way.

JUROR: No, I won't.

COURT: Number two: Do not share that experience with any of the other jury members until after we get through.

\*   \*   \*

DEFENSE: Your Honor, at this time, I would have to—even with the reassurances that Mr. Richardson has given, I would have to object, that he does have personal knowledge. I don't think it could not affect him in deciding punishment. I mean, his property was dam-

aged. Even though it was just minimal, it was damaged, and I believe it would have to affect him in punishment.

COURT: Mr. [Prosecutor].

STATE: Judge, I think that in this situation the case law is clear that he can stay as a juror. I just said—he told you, eye-to-eye, that he could be fair, and so I think we have to take him at his word.

COURT: So what is it you're suggesting, Mr. [Defense Counsel]?

DEFENSE: Whatever has to be done within the law, Your Honor. If a juror has personal—

COURT: No, my—are you saying you want a mistrial or you want me to excuse him and go with 11? What are you wanting?

DEFENSE: Then we would ask for a mistrial.

COURT: Overruled.

After the questioning, the appellant requested a mistrial based on the recently discovered information. The Court denied the request.

The jury found that the appellant was an habitual felony offender,[2] and assessed the punishment of life in prison.

On appeal, the appellant argued that he was denied his right to a fair and impartial jury under the Texas Constitution, because he "contends that we should presume harm from the victim-juror's participation in assessing punishment and, therefore, that we should find error from the rejection of the motion for a mistrial."[3] The Court of Appeals held that since "neither the Texas Court of Criminal Appeals nor the United States Supreme Court has adopted the implied bias doctrine when it is discovered in the middle of a punish-

3. *Uranga,* 247 S.W.3d, at 377.

ment trial that a juror is a victim of the defendant's extraneous (misdemeanor-level) conduct, we shall not follow Uranga's suggestion that such a doctrine must be applied in this case." [4]

We granted review.

The appellant argues that the doctrine of "implied bias" must always be applied when it is discovered during the punishment stage that a juror was a victim of the appellant's extraneous, unadjudicated offense. He says that "no admonition could effectively cure the bias of that juror."

## II.  Implied Bias

■ The Sixth Amendment to the United States Constitution guarantees the right to a trial by an impartial jury in all criminal prosecutions. Article I, Section 10 of the Texas Constitution similarly guarantees that "[i]n all criminal prosecutions the accused shall have a speedy public trial by an impartial jury." This Court has held that the right in the state constitution is no greater than that recognized in the Sixth Amendment.[5] Neither the federal nor the state constitution has been held to require an "implied bias" doctrine.

The limited case law about "implied bias" stems largely from Justice O'Connor's 1982 concurrence in *Smith v. Phillips*.[6] After the trial of Phillips began, one of the jurors submitted an application for employment as an investigator in the District Attorney's Office. Although they had learned of this application, the prosecuting attorneys withheld the information from both the trial court and defense counsel until the trial had concluded and the appellant was found guilty of murder.[7] The federal District Court granted habeas-corpus relief because of prosecutorial misconduct, and the Court of Appeals affirmed.[8] The Supreme Court, while "not condon[ing] the conduct of the prosecutors in this case," held that their "failure to disclose [the juror's] job application, although requiring a post-trial hearing on juror bias, did not deprive respondent of the fair trial guaranteed by the Due Process Clause." [9] The Court adhered to a principle, established in its precedents, that in order to obtain relief, actual (as distinguished from implied) juror bias must be shown.[10] It also held that, while prosecutorial misconduct might be relevant to the juror-bias issue, such misconduct alone would not amount to a due-process violation.[11]

Justice O'Connor said that she "concur[red] in the Court's opinion, but wr[o]te separately to express [her] view that the opinion does not foreclose the use of 'implied bias' in appropriate circumstances." [12] She stated, "Determining whether a juror is biased or has prejudged a case is difficult, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware

---

4.  *Id.*, at 378.

5.  *Jones v. State*, 982 S.W.2d 386, 391 (Tex.Cr. App.1998) ("[T]here is no significant textual difference between the two constitutional provisions which would indicate that different standards of protection should be applied, and we can conceive of no reason why the impartial-jury requirements in the two constitutions should be different.").

6.  455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

7.  *Id.*, at 210–13, 102 S.Ct. 940.

8.  *Id.*, at 215, 102 S.Ct. 940.

9.  *Id.*, at 220–21, 102 S.Ct. 940.

10.  *Id.*, at 215, 102 S.Ct. 940.

11.  *Id.*, at 218–21, 102 S.Ct. 940.

12.  *Id.*, at 222, 102 S.Ct. 940.

of it." [13] She gave an illustrative list of examples in which the "implied bias" doctrine may apply, notably referring to "extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." [14]

This Court has mentioned Justice O'Connor's "implied bias" doctrine twice, first in 2004 in *Franklin v. State*[15] and again in 2008 in *State v. Morales*.[16] Neither case called on us to adopt or reject the doctrine, because neither case turned on the issue of a juror's being disqualified because of bias.

In *Franklin*, when the victim took the stand, a juror recognized her as a member of the Girl Scout troop of which the juror was a leader. The juror had heard the victim's name during voir-dire examination, but she did not recognize the victim until she saw the child.[17] The juror informed the trial judge of their Scouting relationship. The judge questioned her on her ability to judge the case on only the evidence she heard from the stand; the juror stated that she could do so.[18] The judge refused to allow defense counsel to question the juror. This Court said, "The error at issue here is the trial judge's denial of a mistrial when, after the trial began, [the juror] revealed that she knew the victim. . . . So, the issue here is what standard of harm should be applied to the denial of a mistrial based on the juror's withholding of material information." [19] That issue, of course, is different from the issue of whether the juror was biased. We made that clear when we said:

> Judge Cochran's dissent argues that we should apply the federal standard that Franklin must show that Juror Spradlin had actual bias. Under the federal standard, the defendant must not only show that the juror failed to provide an honest answer to a material question during voir dire but also that a correct response would have provided the basis for a challenge for cause. What Judge Cochran advocates is not and has never been the standard in Texas. Under Texas law, the defendant must show that the juror withheld material information during voir dire, and the information is withheld despite due diligence exercised by the defendant. So, "[i]t is not necessary that the concealed information show actual bias; just that it has a tendency to show bias." The fact that Spradlin had a relationship with the victim, one that many people would consider almost a parental role, certainly has a tendency to show bias.[20]

Four years later in *State v. Morales*,[21] this Court again acknowledged the doctrine of "implied bias" without expressly adopted or rejecting it, stating that "we need not decide whether the Sixth Amendment embraces the doctrine of implied

13. *Ibid.*

14. *Ibid.*

15. 138 S.W.3d 351 (Tex.Cr.App.2004).

16. 253 S.W.3d 686.

17. 138 S.W.3d, at 352.

18. *Ibid.*

19. *Id.*, at 353–54.

20. *Id.*, at 355–56 (quoting a law-review note; footnotes omitted).

21. 253 S.W.3d 686 (Tex.Cr.App.2008).

bias." [22] In *Morales*, a prosecutor for the District Attorney's office was seated on the jury that convicted the appellant of aggravated sexual assault and indecency with a child. [23] The fact of her employment was an issue during the voir-dire examination. The appellant presented two claims of error: the trial court's refusal to grant a challenge for cause to the prospective juror, and the denial of effective assistance of counsel by his attorneys' not having peremptorily challenged her (which was necessary to preserve the trial court's ruling for appellate review). The Court of Appeals reversed the conviction on the ineffective-assistance ground. [24] This Court held that the Court of Appeals "erred in holding, at least on the basis that it did, that counsel rendered ineffective assistance of counsel." [25] We expressly said that we did not reach the juror-qualification ground. [26]

In the instant case, the appellant posits that this Court has adopted the "implied bias" doctrine in limited circumstances and should impute the doctrine to the juror in this case. He also argues that the courts below erred because, although the juror in question stated on the record that the incident on his lawn would not affect his ability to decide the case, "no admonition could effectively cure the bias of that juror." We do not accept either argument.

As the Supreme Court said in the *Phillips* opinion, the "Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias" [27]—

not the implied bias of which Justice O'Connor wrote.

In this case, the trial court held a hearing during the trial on the issue of actual bias. We hold, in accordance with the Supreme Court's reasoning in *Smith v. Phillips*, that such a procedure was appropriate and adequate. There was no requirement of a mistrial on a theory that bias must be implied to the juror.

### III.

■ The next issue is whether the trial court erred in refusing to declare a mistrial. The issue before the trial court was a factual one: whether the juror was actually biased.

In the case at bar, the juror did not personally know the appellant; in fact, the juror had never even heard the name of the suspect in the damage to his lawn. This distinguishes the case from *Franklin, supra,* in which the relevant issue was whether the juror's withholding material information—her personal acquaintance with the victim—during voir dire had interfered with the voir-dire process, including the right to exercise peremptory challenges, which is essential to the right to trial by an impartial jury. [28]

The court did allow for additional questioning that might reveal any actual bias. "The juror told the trial court that he was not interested in pursuing criminal charges against Uranga on the basis of what all parties agreed was 'minimal' damage; the

**22.** *Morales*, 253 S.W.3d, at 696.

**23.** *Id.*, at 688.

**24.** *Morales v. State*, 217 S.W.3d 731 (Tex. App.-El Paso 2007).

**25.** *State v. Morales*, 253 S.W.3d 686, 689 (Tex. Cr.App.2008).

**26.** *Ibid.*

**27.** *Smith v. Phillips*, 455 U.S., at 215, 102 S.Ct. 940.

**28.** *See Franklin*, 138 S.W.3d, at 354–55.

juror intended to repair the landscaping himself." [29]

The court also admonished the juror.

The juror ... *repeatedly* promised the trial court that he would not use this incident against Uranga in deciding the sentence. Moreover the trial court expressly instructed the juror to "not let it influence you in any way" and to "not share the experience with any of the other jury members until after we get through." The juror promised he would.[30]

The Court of Appeals held:

The trial court was in the best position to weigh the believability of the juror's repeated promises to both the court and the parties that, in deciding Uranga's punishment, he would not take into account his status as the victim of Uranga's extraneous criminal mischief. Therefore, to the extent that the record supports the trial court's conclusion that the juror would remain unbiased—and absent any evidence to the contrary—we cannot say our de novo review of the record affirmatively reveals a clear abuse of the trial court's discretion in ruling on Uranga's motion for a mistrial.[31]

We agree that the standard of appellate review was whether the trial court abused its discretion on the factual issue of actual bias. We also agree that there was no error.

The judgments of the courts below are affirmed.

MEYERS, J., filed a concurring opinion.

PRICE, J., filed a dissenting opinion, in which HOLCOMB, J., joined.

MEYERS, J., filed a concurring opinion.

I agree with the majority that there was no error in this case. However, I disagree with the path taken to reach that result. Article 37.07, Section 3, of the Code of Criminal Procedure—"Evidence of prior criminal record in all criminal cases after a finding of guilty"—states,

Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3. Under Article 37.07, the extraneous, unadjudicated offense at issue could properly be offered at the punishment stage. In fact, it seems that jurors are encouraged to punish a defendant in their deliberations for any extraneous offenses offered at the punishment phase. Therefore, the trial court's hearing on the question of actual bias by this juror and any subsequent discussion regarding a mistrial was unnecessary.

Though I have long disliked Article 37.07's broad allowance for the consider-

29. 247 S.W.3d 375, 378.

30. *Id.,* at 378–79.

31. *Id.,* at 379.

ation of extraneous crimes, it nevertheless controls the resolution of this case. For this reason, I respectfully concur.

PRICE, J., filed a dissenting opinion in which HOLCOMB, J., joined.

Without fanfare, the Court today announces that there is no such thing as the Sixth Amendment doctrine of implied bias. The whole thing is apparently a figment of Justice O'Connor's imagination. I am here to attest that the implied bias doctrine does exist. I know it does; I have seen it.

Writing for a nearly unanimous Court two-and-a-half years ago, albeit in dicta, I described the provenance of the Sixth Amendment's implied bias doctrine.[1] After summarizing the facts and holding of the majority opinion in *Smith v. Phillips*,[2] I turned to Justice O'Connor's concurring opinion and explained:[3]

> Justice O'Connor joined the majority opinion in *Smith v. Phillips*, but wrote separately to express her view that the due-process holding contained therein did not "foreclose" application of the Sixth Amendment doctrine "of 'implied bias' under appropriate circumstances."[4] She pointed out that sometimes a prospective juror's own ability to objectively gauge his impartiality may be impaired, or he may even have a motive not to disclose it.[5] She continued:

> > While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction. Whether or not the state proceedings result in a finding of "no bias," the Sixth Amendment right to an impartial jury should not allow a verdict to stand under such circumstances.[6]

Justice O'Connor's view that the Sixth Amendment doctrine of implied bias survived the majority's due-process analysis in *Smith v. Phillips* was later endorsed by five members of the Court, albeit in separate opinions, in *McDonough Power Equipment, Inc. v. Greenwood*.[7]

Indeed, the Sixth Amendment doctrine can be traced back at least as far as 1936, when the Supreme Court observed that "[t]he [Sixth] Amendment prescribes no specific tests. The bias of

1. *State v. Morales*, 253 S.W.3d 686 (Tex.Crim. App.2008).

2. 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

3. *Id.* at 694–96 (footnotes from the original *Morales* opinion will be reproduced here, in the margin, in footnotes four through twelve, *post*).

4. *Smith v. Phillips, supra,* at 221, 102 S.Ct. 940.

5. *Id.* at 222, 102 S.Ct. 940.

6. *Id.*

7. 464 U.S. 548, 556–57, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (Blackmun, J., joined by Stevens and O'Connor, JJ., concurring) ("it remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred."); *id.* at 558, 104 S.Ct. 845 (Brennan, J., joined by Marshall, J., concurring) ("for a court to determine properly whether bias exists, it must consider at least two questions: are there any facts in the case suggesting that bias should be conclusively presumed; and, if not, is it more probable than not that the juror was actually biased against the litigant.").

a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as a matter of law." [8] Some have traced its genesis to Chief Justice Marshall's 1807 seminal opinion as a circuit judge in the Aaron Burr treason trial in *United States v. Burr*.[9] Whatever its provenance, the doctrine of implied bias has been recognized and applied by many of the federal circuit courts of appeals,[10] and by some of the courts of appeals in Texas.[11] A few of the federal circuit courts have pointed out that the Supreme Court has never actually reversed a conviction on the basis of implied bias and have questioned whether the doctrine survived *Smith v. Phillips*, notwithstanding Justice O'Connor's concurring opinion. Those courts have nevertheless assumed (without deciding) that the doctrine remains viable, but have held that it did not apply to establish a Sixth Amendment violation on the particular facts presented.[12]

Since the time we issued our opinion in *Morales*, the federal courts of appeals have continued to recognize and apply the im-

---

**8.** *United States v. Wood*, 299 U.S. 123, 133, 57 S.Ct. 177, 81 L.Ed. 78 (1936). *See Franklin v. State*, 138 S.W.3d 351, 363–64 (Tex.Crim.App. 2004) (Cochran, J., dissenting).

**9.** *See United States v. Haynes*, 398 F.2d 980, 983–984 (2nd Cir.1968), citing *United States v. Burr*, 25 Fed.Cas. 49 (C.C.Va.1807). Without expressly invoking the Sixth Amendment, Chief Justice Marshall observed in *Burr, supra*, at 50:

> The end to be obtained is an impartial jury; to secure this end, a man is prohibited from serving on it whose connexion with a party is such as to induce suspicion of his partiality. The relationship may be remote; the person may never have seen the party; he may declare that he feels no prejudice in the case; and yet the law cautiously incapacitates him from serving on the jury because it suspects prejudice, because in general persons in a similar situation would feel prejudice.

**10.** The Second, Fifth, Seventh, Ninth and Tenth Circuits seem to have accepted the Sixth Amendment implied bias doctrine without qualification. *E.g., United States v. Torres*, 128 F.3d 38, 45–46 (2nd Cir.1997); *Brooks v. Dretke*, 444 F.3d 328 (5th Cir.2006) (Opinion on rehearing); *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir.2003); *United States v. Scott*, 854 F.2d 697, 700 (5th Cir.1988); *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir.1976); *United States v. Polichemi*, 219 F.3d 698, 704–05 (7th Cir.2000); *Hunley v. Godinez*, 975 F.2d 316, 318–19 (7th Cir.1992); *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir.2007), *cert.*

denied, [552] U.S. [1314], 128 S.Ct. 1875, 170 L.Ed.2d 752 (2008); *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir.2000); *Dyer v. Calderon*, 151 F.3d 970, 981–82 (9th Cir. 1998); *Tinsley v. Borg*, 895 F.2d 520, 526–29 (9th Cir.1990); *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir.1979); *United States v. Allsup*, 566 F.2d 68, 71–72 (9th Cir.1977); *United States v. Cerrato–Reyes*, 176 F.3d 1253, 1260–61 (10th Cir.1999); *Gonzales v. Thomas*, 99 F.3d 978, 987 (10th Cir.1996); *Burton v. Johnson*, 948 F.2d 1150, 1158 (10th Cir. 1991). In one of these cases, observing that "[t]he concept of implied bias is well-established in the law[,]" the Seventh Circuit Court of Appeals held that a 15–year employee of the United States Attorneys Office was biased as a matter of law notwithstanding her assertions that she could be fair and impartial. *United States v. Polichemi, supra*, at 705.

**11.** *Ruckman v. State*, 109 S.W.3d 524, 528 (Tex.App.-Tyler 2000, pet. ref'd); *Harvey v. State*, 123 S.W.3d 623, 631 (Tex.App.-Texarkana 2003, pet. ref'd).

**12.** The Fourth and Sixth Circuits have tentatively suggested that the implied bias doctrine might have been abrogated, but they have avoided resolving the issue by holding that it would not apply in any event to the facts presented in any of the cases before them. *E.g., Conner v. Polk*, 407 F.3d 198, 206 n. 4 (4th Cir.2005); *Jones v. Cooper*, 311 F.3d 306, 312–13 (4th Cir.2002); *Fitzgerald v. Greene*, 150 F.3d 357, 365 (4th Cir.1998); *Person v. Miller*, 854 F.2d 656, 664 (4th Cir.1988); *Johnson v. Luoma*, 425 F.3d 318, 326–27 (6th

plied bias doctrine.[13] Indeed, the Fifth Circuit regards the doctrine as so entrenched that it has seen fit to reverse a capital murder conviction on the basis of implied juror bias even under the rigorously deferential criteria governing federal habeas review under the Antiterrorism and Effective Death Penalty Act.[14]

Notwithstanding the durability of the Sixth Amendment doctrine of implied bias, the Court today rejects it almost effortlessly, citing only the majority opinion in *Smith v. Phillips* for support.[15] But *Smith v. Phillips* was decided under the Fourteenth Amendment's due process requirement of a fair trial, not the Sixth Amendment's independent guarantee of an impartial jury. The majority in *Smith v. Phillips* observed that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation."[16] As Justice O'Connor emphasized in her concurring opinion, there is no inherent conflict between this due process principle and the co-existing Sixth Amendment principle that *some* jurors may find themselves in situations that are *so* compromising that a hearing will not satisfy the guarantee of an impartial jury. Determining actual bias on a juror's part is problematic to begin with, "partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it."[17] At a certain point, the potential for bias may reach such a level that judges cannot depend on the time-honored tools for gauging credibility, such as tone of voice and demeanor, to ascertain the trustworthiness of the juror's claims of impartiality. While affording the accused a hearing in which to try to root out actual bias under these circumstances may always satisfy his right to the procedural protections of due process, meant to ensure basic fairness, it will sometimes prove inadequate to ensure jury impartiality for Sixth Amendment purposes. Justice O'Connor's valid insight is that the *Smith v. Phillips* majority's Fourteenth Amendment due process holding may be harmonized with the Sixth Amend-

---

Cir.2005); *United States v. Frost*, 125 F.3d 346, 380 (6th Cir.1997).

**13.** *See Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir.2008) ("in extraordinary cases, courts may presume bias based on the circumstances.") (internal quotation marks omitted); *United States v. Brazelton*, 557 F.3d 750, 753 (7th Cir.2009) ("The concept of implied bias is well-established in the law."); *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir.2009) ("There is also a narrow class of relationships described by Justice O'Connor's concurrence in *Smith v. Phillips*, and recognized by this court on several occasions, for which a juror can be presumed biased."). The Sixth Circuit continues to assume, without deciding, that the doctrine of implied bias abides, but does not in any event call for reversal on the facts of the particular case. *United States v. Russell*, 595 F.3d 633, 641–42 (6th Cir.2010); *Treesh v. Bagley*, 612 F.3d 424, 437 (6th Cir.2010). And lately, the Eighth Circuit has noted, but not resolved, an inconsistency in its own case law with respect to whether it will apply implied bias. *Sanders*

*v. Norris*, 529 F.3d 787, 791–93 (8th Cir. 2008).

**14.** *See Brooks v. Dretke, supra*, at 329 ("We maintain that the doctrine of implied bias is 'clearly established Federal law as determined by the Supreme Court' " for purposes of 28 U.S.C. § 2254(d)(1), which requires federal habeas judges to defer to the judgments of state courts unless a particular state court judgment is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States").

**15.** Majority opinion, at 306 (holding that *Smith v. Phillips* stands for the categorical proposition that a hearing will invariably prove to be an adequate procedure for revealing actual juror bias).

**16.** 455 U.S. at 217, 102 S.Ct. 940.

**17.** *Id.* at 221–22, 102 S.Ct. 940 (O'Connor, J., concurring).

ment promise of jury impartiality so long as courts continue to recognize that, under certain extreme circumstances, they should refuse to proceed to verdict or uphold a conviction on appeal even in the face of a juror's confident assurances that he can be fair and disinterested. Nothing that I can find in the majority opinion in *Smith v. Phillips* necessarily contradicts Justice O'Connor's insight, much less expressly rejects it. This Court's reliance on that majority opinion today to disown the Sixth Amendment doctrine of implied bias is, in my view, a grievous mistake.

Applying the doctrine of implied bias on the facts of this case, I would reverse the appellant's conviction and remand the cause for a new punishment hearing. A juror who unexpectedly turns out to be the victim of one of the accused's extraneous offenses does not fit neatly into any of Justice O'Connor's categories. But her list was only intended to be exemplary, not exhaustive. I can think of few more compelling motives a juror could have to impose punishment on an improper basis than the motive to avenge some wrong perpetrated by the accused upon the juror himself. That the extraneous offense the appellant committed against the juror in this case is a relatively benign property offense makes no difference. It is still a highly personal affront against the juror. The high potential for injecting personal animus into the jury room during the punishment deliberations counsels against our trusting either the juror's claim to indifference or the efficacy of any judicial admonishment to ensure fairness.

The Sixth Amendment implied bias doctrine is alive and well and ought to be applied on the facts of this case. The Court should reverse the judgment of the court of appeals and remand the cause to the trial court for a new punishment pro-

ceeding.[18] Because it does not, I respectfully dissent.

---

18. TEX.CODE CRIM. PROC. art. 44.29(b).