NUMBER 13-09-00555-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

ERIC GARCIA,                                                                               Appellant, 

 

v.

 

THE STATE OF TEXAS,                                                               
Appellee.

                                                                                                                             

 

On appeal from the 148th
District Court

of Nueces County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION

 

Before Justices
Garza, Vela, and Perkes

Memorandum Opinion by
Justice Garza

 

            Appellant, Eric Garcia,
was indicted for aggravated robbery, see Tex. Penal Code Ann. § 29.03 (Vernon 2003), but a jury found
him guilty of the lesser-included offense of aggravated assault, see id. §
22.02(a) (Vernon Supp. 2010).  The trial court found the State’s enhancement
allegations of two prior felony convictions “true,” and sentenced him to thirty
years’ imprisonment.  See id. §§ 22.02(b), 12.42(d) (Vernon Supp.
2010).  By four issues, appellant contends:  (1) the evidence is insufficient
to support his conviction; (2) the trial court erred in admitting a photograph;
(3) the trial court erred in denying his motion for mistrial based on alleged
juror bias; and (4) the jury charge’s application paragraph on the
lesser-included offense of aggravated assault erroneously included the elements
of the greater offense of aggravated robbery.  We affirm.  

I. 
Background

A.        The State’s
Evidence 

            On January 23, 2009,
around 10:45 p.m., police officers responded to a 911 call from Elizabeth Ruiz
regarding a home invasion and robbery by three suspects.  Ruiz was home with
her husband, Darryl Rodriguez, and their children when the incident occurred.  We
detail below relevant testimony presented by some of the State’s witnesses. 
The defense presented no witnesses. 

1.   
  Darryl
Rodriguez

            Rodriguez testified that after
hearing a noise, he went out the back of his house to investigate.  He was
confronted by three men wearing hoodies and bandannas over their faces.  One of
the men stuck a gun in his face.  The men started beating Rodriguez, and during
the struggle, he fell and hit his head.  Rodriguez said he would give the men
“whatever they want[ed].”  One of the men spotted Martin Ramos, a friend who
was working in Rodriguez’s garage, and escorted him into the house at gunpoint.[1] 
Two of the men held guns on Rodriguez and Ramos in the kitchen; the third man,
also armed with a gun, went into a bedroom and confronted Ruiz.  Rodriguez
opened the kitchen cabinet where he kept approximately $15,000 and a gun; when
one of the men was momentarily distracted, Rodriguez grabbed his gun from the
cabinet and began firing.  The two men returned fire.  Rodriguez ran out of the
kitchen and down the hallway.  In the hallway, he was attacked by the third
man, who picked him up and held him in a “choke hold.”  Rodriguez put his gun
over his shoulder and fired once.  The third man then ran out of the house. 
Rodriguez retrieved another gun and returned to the kitchen, where he saw one
of the men on the floor reaching for his gun.  Rodriguez shot him “a few more
times,” took his gun away, and told Ruiz to call the police.  When the police
arrived, they found one person dead outside near a maroon Lincoln Town Car. 
Rodriguez  did not know any of the men involved in the incident.

2.     Elizabeth Ruiz 

            Ruiz testified that
she “knew something was wrong” when she saw a man with a bandanna over his face
in her home.  She ran to her bedroom, but one of the men followed, pointed a
gun at her face, and told her to get on the floor.  She saw the man “mess around”
with the top of her dresser.  Ruiz identified her wedding ring, which was later
found on the seat of the Lincoln.  

3.     Detective Curtis
Abbott

            Curtis Abbott, a
detective with the Corpus Christi police department, testified that when he
arrived at the house, the crime scene had been secured by other patrol
officers.  One person was found dead in front of the house next to a maroon
Lincoln.  Detective Abbott said he observed blood in the street leading away
from the residence.  Other evidence was discovered nearby:  a gun with blood on
it was found in a trash can; a black bandanna was found in the yard, and a
baseball cap was found behind some bushes on a nearby street.[2] 
In the course of investigating the incident, the police discovered marihuana
and cocaine, along with numerous weapons in the Rodriguez house.  Detective
Abbott testified that the deceased person was wearing latex gloves.  Another
person found inside the house was suffering from multiple gunshot wounds and
was transported for emergency medical treatment.  Shortly after the incident,
on February 5, 2009, Detective Abbott met with appellant, and noticed that
appellant’s right arm was bandaged around the elbow and was in a sling.

4.     Robin Olson
Castro 

            Robin Olson Castro, a
forensic scientist with the Texas Department of Public Safety Crime Laboratory
in Corpus Christi, testified that she performed DNA analysis on evidence
collected in the case.  Blood sample evidence taken from the driveway of the
residence, as well as samples taken from a nearby sidewalk, curb, and a curb in
front of nearby Brawner Parkway, was consistent with Garcia’s DNA profile. 
Blood samples taken from the Lincoln, including the steering wheel and interior
and exterior, were consistent with Garcia’s DNA profile.  In addition, blood
samples taken from the gun, baseball cap, and bandanna were consistent with
Garcia’s DNA profile.   

5.     Katrina
Aggeloupolous 

            Katrina
Aggeloupoulous, a latent-print examiner with the Corpus Christi Police
Department, testified that Garcia’s prints were found on the exterior of the
passenger’s side of the Lincoln’s windshield.  

6.      State’s Exhibit 
9

            The State also
introduced and played for the jury an audio recording of a telephone call that
appellant made to his mother from jail.  During the call, appellant says that
he was present at the Rodriguez house, but will not answer questions about
others because he does not want anyone saying that he “snitched.” 

II. 
Sufficiency of the Evidence

A.     Standard of Review 

            The court of criminal
appeals has recently held that there is “no meaningful distinction between the Jackson
v. Virginia legal sufficiency standard and the Clewis factual-sufficiency
standard” and that the Jackson standard “is the only standard that a
reviewing court should apply in determining whether the evidence is sufficient
to support each element of a criminal offense that the State is required to
prove beyond a reasonable doubt.”  Brooks v. State, 323 S.W.3d 893,
902-03, 912 (Tex. 2010) (plurality op.).  Accordingly, we review claims of
evidentiary sufficiency under “a rigorous and proper application of the Jackson
standard of review.”  Id. at 906-07, 912.  

            Under the
Jackson standard, “the relevant question is whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.”  Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Brooks,
323 S.W.3d at 898-99 (characterizing the Jackson standard as: 
“Considering all of the evidence in the light most favorable to the verdict,
was a jury rationally justified in finding guilt beyond a reasonable doubt”).

            We
measure the legal sufficiency of the evidence by the elements of the offense as
defined by a hypothetically correct jury charge.  Coleman v. State, 131
S.W.3d 303, 314 (Tex. App.–Corpus Christi 2004, pet. ref’d) (citing Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  In order to prove that
appellant committed the offense of aggravated assault under section 22.02 of
the penal code, as alleged in the indictment, the State was required to prove
that (1) appellant (2) either acting alone or as a party[3];
(3) intentionally or knowingly; (4) threatened or placed Darryl Rodriguez in
fear of imminent bodily injury or death; and (5) used or exhibited a firearm
during the assault.[4]


B.    Discussion 

            Appellant’s challenge
to the sufficiency of the evidence is limited to the issue of identity. 
Specifically, appellant argues that “no one has identified the defendant nor
did they connect him to the person that had committed the robbery.”  We
disagree.  Although Rodriguez, Ruiz, and Ramos each testified that they could
not identify the assailants because their faces were covered with bandannas,
the State introduced DNA evidence from blood samples collected from the front
of the residence and leading down the street; such evidence was consistent with
appellant’s DNA profile.  Similarly, blood evidence collected from the Lincoln,
a gun found in a nearby trash can, a black bandanna found in the yard, and a
baseball cap found nearby matched appellant’s DNA profile.  Appellant’s
fingerprints were also found on the Lincoln’s windshield.  Rodriguez testified
that when one of the assailants picked him up and held him in a head lock, he
put his gun over his shoulder and shot.  When Detective Abbott saw appellant
less than two weeks after the incident, appellant’s right arm was bandaged and
in a sling.  The only controverting evidence that appellant points to is:  (1)
no witness identified him; and (2) Rodriguez’s credibility was “suspect at
best” because drugs and large amounts of cash were in the house.  

            Viewing
all the evidence in the light most favorable to the verdict, we conclude the
evidence is legally sufficient for a rational jury to find appellant guilty of
aggravated assault beyond a reasonable doubt.  We overrule appellant’s first
issue. 

III.  Admission
of Photo 

            By his
second issue, appellant contends the trial court erred in admitting “State’s
Exhibit 7”, described as a photograph taken at the crime scene of the deceased
person’s hand wearing a latex glove.  Appellant contends that the photograph
was not material to any issue, was “gruesome” and “highly inflammatory,” and
that its prejudicial nature outweighed its probative value.  See Tex. R. Evid. 403.  

A.          
Standard
of Review 

            The
admissibility of photographs is within the sound discretion of the trial judge.
Young v. State, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009); Williams
v. State, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997).  Generally, a
photograph is admissible if verbal testimony as to matters depicted in the
photographs is also admissible.  Young, 283 S.W.3d at 854. 

            In
determining whether the probative value of photographs is substantially
outweighed by the danger of unfair prejudice, we consider several factors,
including, but not limited to:  (1) the number of exhibits offered; (2) their
gruesomeness, size, and detail; (3) whether they are black and white or color;
(4) whether they are close-up; (5) whether the body is naked or clothed; and
(6) the availability of other means of proof and the circumstances unique to
each case.  Hayes  v. State, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). 
   

B.        Discussion

            Appellant
challenges the admission of “State’s Exhibit 7.”  State’s Exhibit 7, however,
was not admitted.  State’s Exhibit 2 was admitted and includes a photograph of
the deceased person’s hand.  Appellant’s counsel objected to two of the
photographs in State’s Exhibit 2 showing the decedent on grounds that they were
not relevant and that any probative value was outweighed by their prejudicial
effect.  The following discussion occurred before the court prior to jury
selection:

[Defense counsel]: And my argument
would simply be it’s not relevant, first of all.  If the Court does deem it
relevant, it’s the probative value is exceeded by the prejudicial effect, and
it will also cause jury confusion as to who’s on trial here today and what this
is about. 

 

[Prosecutor]:              Well, it
helps account for the other two individuals and           they just—it excludes
anybody else from the three, except for Mr. Garcia, that we can account for
the             other two and where they are.

 

[Court]:                       Okay. 
I’m going to sustain his objection.

 

[Defense counsel]:  As to all the
photos, or—

 

[Court]:                       Well,
you didn’t have an objection as to the trash can or the other one. 

 

[Defense counsel]:  No.

 

[Court]:                       Just to
the ones of the decedent?

 

[Defense counsel]:  Right.

 

[Court]:                       So
however you want to do that.

 

[Prosecutor]:              We’ll cut
it out. 

 

[Defense counsel]:  Okay.

 

[Court]:                       Okay.

 

[Defense counsel]:  And then this
proposed State’s Exhibit Number 7, along those—let’s see.  Okay.  First of all—

 

[Prosecutor]:              Hang on.

 

[Defense counsel]:  Go ahead.

 

[Prosecutor]:              As to the
decedent, you said—

 

[Court]:                       That
one and the hand.

 

[Prosecutor]:              Well, the
hand I want to offer it because it shows that the individuals were all wearing
latex gloves which shows—it’s proof to show that they’re doing a robbery and
they’re not trying to leave any fingerprints.

 

[Court]:                       Is that
what that is?

 

[Prosecutor]:              Yes.  And
the latex gloves—or the purpose we’re saying is so they won’t leave any
fingerprints behind at the crime scene.

 

[Defense counsel]:  I don’t think
there’s been any evidence that’s going to be presented by eyewitnesses that my
client had latex gloves on.  I don’t know that that’s going to be—

 

[Prosecutor]:              I don’t
remember, but we have the actual man that was—said he struggled with him, or
who he saw out there.  But people that normally wear latex gloves at a crime
scene is to keep from leaving any fingerprints behind.  And that would be
consistent with these individuals doing a robbery or some kind of crime there.

 

[Court]:                       Okay. 
I’ll allow the hand, but not the body.

 

[Prosecutor]:              Yeah.  I’ll
cut it out.

 

[Defense counsel]:              And
then we have State’s proposed Exhibit Number 7.  The—this is another—there are
nine photos on this one 8 by 11 sheet of paper.  The middle—on the left-hand
column, the middle photo would—this is—for the same reason I’m objecting to
this too.  It’s the hand of the decedent with a latex glove and it’s tore [sic]
up.  I’m also going to object to this as unnecessarily gruesome.

 

[Prosecutor]:              I just need
one photo with the hand with the latex glove, Your Honor. 

 

The State withdrew
its request to admit State’s Exhibit 7 because “[w]e’ve got the other one.”  It
is clear that appellant’s counsel objected to the admission of the photograph
of the deceased person’s hand.  Accordingly, out of an abundance of caution, we
will address appellant’s complaint as it relates to the photograph in State’s
Exhibit 2.

            State’s
Exhibit 2, showing the deceased person’s hand wearing a latex glove, was
re-introduced during the testimony of Detective Abbott.  He testified that
latex gloves were recovered from the body of the decedent and that latex gloves
prevent a person from leaving fingerprints.  The photograph at issue is a
three-and-a-half by five-inch color photograph showing the deceased person’s
hand wearing a lacerated latex glove, palm up, and approximately six inches of
the decedent’s forearm, covered by what appears to be a long-sleeved sweatshirt. 
The sleeve is slightly pushed up, revealing a partial tattoo.  There is some
blood on the end of the sleeve.  The photograph has probative value because, as
the prosecutor argued, it establishes that the assailants took precautions to
avoid leaving fingerprints.[5] 
No other photographs of the deceased person were admitted.  The trial court
admitted the photograph of the deceased person’s hand, but did not admit a
photograph of the body.  We conclude that the photograph is relevant and that
its probative value is not substantially outweighed by its possible prejudicial
effect.  See Tex. R. Evid. 403.  Thus,
we conclude that the trial court did not abuse its discretion in admitting the
photograph of the deceased person’s hand in State’s Exhibit 2.  We overrule
appellant’s second issue.  

IV. 
Juror Bias

            By his third
issue, appellant contends the trial court erred in denying his motion for
mistrial based on alleged juror bias.  Appellant contends that one of the
jurors stated that she was “extremely angry” and felt “like a prisoner” because
the trial court called a recess on the second day of trial and the trial did
not continue until five days later.  Appellant argues that the juror’s anger
and hostility affected her deliberations in the case and prevented him from
receiving a fair trial. 

A.  
  Standard
of Review

            We review a trial court's
ruling on a motion for a mistrial using an abuse of discretion standard,
viewing the record in the light most favorable to the trial court's ruling and
upholding that ruling if it was within the zone of reasonable disagreement. See
Webb v. State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).  A trial court
abuses its discretion in denying a motion for a mistrial only when no
reasonable view of the record could support the court's ruling.  Id. 

            The decision to remove or retain a
juror lies within the discretion of the trial court.  Uranga v. State,
330 S.W.3d 301, 307 (Tex. Crim. App. 2010);  Bjorgaard v. State, 220
S.W.3d 555, 560 (Tex. App.–Amarillo 2007, pet. dism'd) (citing Anderson v.
State, 633 S.W.2d 851, 853-54 (Tex. Crim. App. 1982)).  When reviewing a
trial court's decision regarding potential jury misconduct, an appellate court
should defer to the trial court's resolution of the historical facts and its
determinations concerning credibility and demeanor.  See Quinn v. State,
958 S.W.2d 395, 401 (Tex. Crim. App. 1997); see also Gamboa v. State,
296 S.W.3d 574, 584 (Tex. Crim. App. 2009) (holding that because a juror
testified that he could remain impartial despite overhearing a conversation
about the case he was serving on, the trial court did not abuse its discretion
in denying a mistrial).  A juror is biased when an inclination toward one side
of an issue rather than to the other leads to the natural inference that the
juror will not or did not act with impartiality.  Anderson, 633 S.W.2d at
853.  

B.  
 Discussion


            On the second day of trial, the trial
court told the jury that it was necessary to recess the trial because of a
“medical situation.”[6] 
One of the jurors, N. K., told the court that because of her work schedule and
obligations, she would suffer a hardship if she was required to return the
following week.  

            When the trial
resumed five days later, appellant’s counsel advised the court that Juror N. K.
“appear[ed] to be very angry” and was “glaring” at counsel and the court. 
Outside the presence of the other jurors, the trial court questioned Juror N.
K. about her ability to be fair.  Juror N. K. responded:

[Juror N.
K.]:              I will be fair, but I’m extremely angry.  I feel like a
prisoner.  I feel like my rights have been taken away.  And I think what you
guys have done to all of us jurors, to hold us over for a week is totally
unconscionable.  And I’ll be very honest with you, I don’t appreciate it.  I—I
think I—it’s just a total lack of respect for all 12 of us.

  

[Court]:                       Okay. 
Now, we appreciate your concern.  I appreciate if you keep those concerns to
yourself, if you have not already expressed it to them.

 

[Juror N. K.]:              I’m not
the only one that feels that way, ma’am.

 

[Court]:                       Okay.

 

[Juror N. K.]: 
            We’ve all really—we’ve all expressed our opinions to ourselves.

 

            When the other
jurors returned to the courtroom, the trial judge noted that the “issue” of
being required to return for service had come to her attention, and it was
necessary to inquire as to whether the jurors could be “fair to both sides.” 
The trial court explained that the delay was “beyond anybody’s control” and
polled the jurors individually as to whether each could be fair.  Each juror responded
affirmatively.  After the jurors were again excused, appellant’s counsel argued
that appellant would not receive a fair trial and requested a mistrial.  The
trial court denied the request for a mistrial.  

            In Uranga,
the court of criminal appeals held that the trial court did not abuse its
discretion in denying a motion for mistrial on alleged juror bias.  Uranga,
330 S.W.3d at 307.  In Uranga, a juror learned during the punishment
phase that the defendant had damaged the juror’s property in an extraneous
offense.  Id. at 302-03.  The trial court held a hearing during the
trial, questioned the juror regarding any actual bias, instructed the juror to
not allow the incident to influence his decision, and accepted the juror’s
promise that he would not use the incident against the defendant in deciding
the sentence.  Id.  The court of criminal appeals held that the trial
court did not abuse its discretion in refusing to grant a mistrial.  Id. at
307. 

            Similarly, in
the present case, the trial judge held a hearing during the trial, questioned
Juror N. K., questioned the jurors individually, and obtained assurances that
each juror could be fair.  We conclude that the trial court did not abuse its
discretion in denying the motion for mistrial.  We overrule appellant’s third
issue. 

V.  Charge Error[7]

            By his fourth issue, appellant
complains that “[t]he trial court purported to submit to the jury a
lesser-included offense of aggravated assault but actually submitted to the
jury the charge of aggravated robbery twice; one section was merely labeled aggravated
assault.”  The State concedes that the application paragraph of the charge on
the lesser-included offense of aggravated assault incorrectly repeated the
elements of aggravated robbery, the greater offense.  The State argues,
however, that the erroneous instruction did not harm appellant because it
increased the State’s burden to prove the additional element that the assault
occurred “while in the course of committing theft of property and with the
intent to obtain and maintain control over the property.”  

A.    Standard of Review 

            “A claim of jury-charge error is
reviewed using the procedure set out in Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1985).”  Barrios v. State, 283 S.W.3d 348, 350
(Tex. Crim. App. 2009).  “The first step is to determine whether there is error
in the charge.”  Id.  “If there was error and appellant objected to the
error at trial, reversal is required if the error ‘is calculated to injure the
rights of the defendant,’ which we have defined to mean that there is ‘some harm.’”
 Id. (quoting Almanza, 686 S.W.2d at 171).  “If the error was not
objected to, it must be ‘fundamental’ and requires reversal . . . only if it
was so egregious and created such harm that the defendant ‘has not had a fair
and impartial trial.’”  Id. (quoting Almanza, 686 S.W.2d at 171).


B.    Discussion 

            It is undisputed that the application
paragraph for aggravated assault contained an additional element and that
appellant did not object to the charge on that basis.  We need not decide,
however, whether the charge was erroneous because even if we were to presume
error, appellant cannot prevail because he cannot show he was harmed by the
inclusion of the additional element in the application paragraph.  Appellant
makes no argument whatsoever regarding harm.  He simply asserts that he “should
be acquitted” because both application paragraphs contained the same language. 
Moreover, appellant was not harmed by an instruction that required the State to
prove an additional element.  See Caballero v. State, 927 S.W.2d 128,
131 (Tex. App.–El Paso 1996, pet. ref’d) (holding defendant was not harmed by
an element of proof that was additional to that actually necessary to convict). 
We overrule appellant’s fourth issue.

VI.  Conclusion

            We affirm the trial
court’s judgment.

 

DORI CONTRERAS GARZA

Justice

 

Do
not publish.

Tex. R. App. P.
47.2(b)

Delivered
and filed the

14th
day of April, 2011.









[1]
Martin Ramos’s testimony was consistent with Rodriguez’s as to the events that
transpired.  





[2]
Other trial testimony established that the blood trail continued for
approximately fifty to seventy-five yards.  The trash can containing the gun
was approximately fifty yards from the house.





[3]
Appellant was charged as a party.  See Tex.
Penal Code Ann. § 7.02(a)(2) (Vernon 2003) (“A person is criminally
responsible for an offense committed by the conduct of another if . . . acting
with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense.”).

 





[4]
See id. §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2010).  We note that
the application paragraph of the charge on aggravated assault included an
additional element:  “while in the course of committing theft . . . .”  The
addition of this element is the subject of appellant’s fourth issue, which we
address separately.  As noted, we review the sufficiency of the evidence by the
elements of the offense as defined by a hypothetically correct jury charge.  Coleman
v. State, 131 S.W.3d 303, 314 (Tex. App.–Corpus Christi 2004, pet. ref’d). 






[5]
The photograph thus has probative value as to appellant’s liability as a party
to robbery.  See Tex. Penal Code
Ann. § 7.02(a)(2).





[6]
When trial resumed five days later, appellant’s counsel advised, outside the
presence of the jury, that appellant had suffered a mild heart attack, but was
“okay.”





[7]
After appellant’s attorney filed a brief in this case, appellant filed a pro se
brief addressing his fourth issue.  It is well-settled that an appellant has no
right to hybrid representation in Texas.  Ex parte Taylor, 36 S.W.3d
883, 887 (Tex. Crim. App. 2001).  Accordingly, we consider only the issues
raised in appellant’s counsel’s brief and do not address arguments raised in
appellant’s pro se brief.