

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00178-CR

---

**KEVIN EARL GRIFFIN, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 106th District Court
Garza County, Texas
Trial Court No. 22-3923, Honorable Reed A. Filley, Presiding

---

May 11, 2026

**MEMORANDUM OPINION**

Before DOSS and YARBROUGH and PRATT, JJ.

Appellant, Kevin Earl Griffin, appeals from his convictions of the offenses of terroristic threat[1] and aggravated assault on a public servant with a deadly weapon[2] and the resulting respective sentences of 10 and 14 years of imprisonment. Appellant challenges his convictions through two issues. In the first, he contends his counsel was

---

[1] TEX. PENAL CODE § 22.07.

[2] TEX. PENAL CODE § 22.02.

ineffective; in the second, he argues the evidence was insufficient to support his convictions. We affirm.

## BACKGROUND

In early April 2022, Appellant met with Dawn Jones, the principal at Post Elementary School. Appellant had spoken with Jones two days prior about an ongoing issue with his son who was a student at the school.[3] Appellant did not have an appointment the day he arrived at the school but appeared to be angry and "pretty wound up," asking to speak with someone about problems between his child and the child's mother's boyfriend, Willie Bell. Appellant wanted the school to talk to CPS about Bell and to intervene on Appellant's behalf to help him get his son back.

When Appellant became loud at the front desk of the school,[4] Jones invited Appellant into her office to discuss what the school could and could not do in this situation.[5] The door to the office remained open until Appellant began to curse. Jones then closed the door "so that [her] kids were not subject to that." When Jones refused to call Appellant's child to the office to explain what had been happening with Bell, Appellant described to her an altercation he himself had with the man. He explained he had used a knife and asked Jones if she wanted him to show her how he had been holding the

---

[3] Appellant testified that he thought Jones was his friend in part because she called him "every time" his son missed school. Appellant noted his son had missed approximately 40 days of school.

[4] Jones testified that usually, when Appellant came to the school, the school's student resource officer (SRO) would join the meeting to help "all the office staff feel safer . . . ." The SRO was unavailable on the day this incident occurred.

[5] Appellant testified Jones told him the school could not do what he wanted regarding CPS but she did provide information on how he could accomplish the task.

knife. He took the knife "slowly," showing Jones how he could use the knife in a way similar to using brass knuckles. He said he could use the knife to slit a throat and told Jones she would "bleed out before [she] hit the floor." Appellant also told Jones he had affiliations with gangs in the Houston area and that he could kill her, her family, or anyone who got in the way of him and his children. He said he would kill them all. Jones testified she felt fear in this situation for "my life, for . . . 350 kids in that school and 70-something employees. I was afraid for all of us."

**ANALYSIS**

Issue One—Ineffective Assistance of Counsel

Through his first issue, Appellant argues his trial counsel was ineffective because he failed to discover that one of the jurors had been on the Post Independent School District Board for 15 years. As support for his position that his attorney was ineffective, Appellant highlights that his trial counsel: (1) admitted his performance was deficient and that there was no strategy for failing to use a peremptory strike on the complained-of juror;[6] (2) only asked three substantive questions during voir dire; and (3) relied on written questionnaires to uncover potential biases. Appellant claims a peremptory strike should have been used against the juror.

To demonstrate ineffective assistance of counsel, an appellant must show, first, that counsel's performance was deficient, i.e., it fell below an objective standard of

---

[6] Counsel stated, "I should never have let the school board president on a case involving the school district. So that was an error, and I'm going to put on the record that was an error. That was – there was no strategy to do that. I didn't know he was the school board president. And so if I screwed up, I screwed up."

3

reasonableness, and, second, that appellant was prejudiced in that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Both prongs must be satisfied. *Id.* To be sustained, an allegation of ineffective assistance must be affirmatively demonstrated in the record. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

Assuming counsel's performance was deficient under prong one, we cannot find Appellant has shown how he was prejudiced by counsel's mistake or why the outcome of the trial would have differed but for the purported mistake as required in prong two of the *Strickland* test. *Louis v. State*, 61 S.W.3d 593, 597 (Tex. App.—Amarillo 2001, pet. ref'd) (citing *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 1053, 121 S. Ct. 2196, 149 L. Ed. 2d 1027 (2001) (appellant must prove there exists a reasonable probability that the outcome would have been different but for counsel's unprofessional errors)).

First, we note Appellant's argument concerning the second prong is simply, "Appellant suffered substantial prejudice based on counsel's lack of inquiry and the prejudice is not rendered harmless based on the State's voir dire questioning. There is more than a reasonable likelihood that if the school board president had not sat on the jury the outcome would be different." Beyond this conclusory statement, Appellant makes no attempt to explain how the outcome would have been different if another juror had been seated on his jury. *See Milum v. State*, 482 S.W.3d 261, 269 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("[m]ere conclusory assertions of prejudice are not enough");

4

*Gamboa v. State*, 822 S.W.2d 328, 330 (Tex. App.—Beaumont 1992, pet. ref'd) (noting conclusory statements are not enough to establish prejudice under *Strickland*).

Second, Appellant has not made the requisite showing to prevail on his issue. Appellant stated in his brief that "[he] would have used a remaining peremptory strike on the objectionable juror had he known the extent of the juror's relationship with Post ISD." In *Ex parte Covarrubias*, 665 S.W.3d 605, 622 (Tex. Crim. App. 2023), the Court of Criminal Appeals stated that to establish prejudice for deficient attorney performance in failing to exercise a peremptory challenge regarding a juror, the record must show that the juror "was in fact biased." *Id.* Without that showing, an appellant cannot establish the jury's verdict would have been different if another person sat in the complained-of juror's place. *Id.* Therefore, we must determine whether Appellant has established the juror was actually biased.

A juror is biased if his beliefs or opinions prevent or substantially impair his performance as a juror in accordance with his instructions and oath. *Sadler v. State*, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998). When there is an allegation that a jury member is biased, it is appropriate for the trial court to hold a hearing to determine whether the juror is actually biased. *Uranga v. State,* 330 S.W.3d 301, 306 (Tex. Crim. App. 2010).

In this case, the complained-of juror did not indicate during voir dire his position on the board, did not indicate he had any knowledge of the case, and did not indicate he could not be fair or impartial.[7] His position on the school board was discovered after voir

___

[7] In exploring this issue with the trial court, the State noted, "from working with the witnesses in this case . . . this particular issue was never taken before the school board and the school board was not briefed on this issue by the superintendent. [During voir dire,] [w]e asked if anyone had a preconceived notion

5

dire was completed, the jury had been empaneled, and trial began. When defense counsel brought this issue to the trial court's attention, the court permitted counsel the opportunity to establish bias on the part of the juror. During the hearing to determine bias, the juror testified he had no previous knowledge of the case, even though he was a member of the school board at the time of the offense. He testified, "I – I recall nothing – I would have been – that's why – that's why I've never said anything. I – I knew nothing about the case until –- until as a juror yesterday." There was no testimony that the juror's beliefs or opinions would prevent or substantially impair his performance as a jury member in accordance with his instructions and his oath.[8] Accordingly, the record from the *Uranga* hearing does not establish the juror was actually biased.[9]

In short, Appellant failed to prove bias. The juror said he had no knowledge of the case and never indicated he could not be impartial. There was, therefore, no evidence of actual bias as required under *Ex parte Covarrubias.* It is Appellant's burden to prove by a preponderance of the evidence that he was prejudiced by defense counsel's deficient performance. Because he has not done so, we resolve the issue against Appellant.

---

about the guilt or innocence of the defendant. There were, again, people that raised their hands. [The complained-of juror] was not one of the people that raised their hands."

[8] The record also shows there was nothing in the jury card information that would have led defense counsel to strike the juror.

[9] We note also bias should not be implied. *See Johnson v. State,* No. 09-17-00058-CR, 2018 Tex. App. LEXIS 2388, *5–6 (Tex. App.—Beaumont Apr. 4, 2018, pet. ref'd) (mem. op., not designated for publication) (stating, "Texas law does not recognize the doctrine of implied bias.").

Issue Two—Insufficiency of Evidence

Via his second issue, Appellant claims the evidence was insufficient to support his conviction for aggravated assault on a public servant with a deadly weapon because the evidence did not show Jones was lawfully discharging official duties during the assault.

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). We presume that the jury resolved any conflicting inferences in favor of the verdict and should defer to such resolutions. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Finally, a jury is permitted to make reasonable inferences from the evidence. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007).

A person commits the offense of assault if he "intentionally or knowingly threatens another with imminent bodily injury." TEX. PENAL CODE § 22.01(a)(2). A person commits aggravated assault if he "uses or exhibits a deadly weapon during the commission of the assault." *Id.* at § 22.02(a)(2). The offense is a first-degree felony if it is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." *Id.* at § 22.02(b)(2)(B).

Appellant challenges only the evidence supporting a finding that Jones was lawfully discharging an official duty when the assault occurred. Therefore, we will address only that element of the offense.

7

Appellant argues there was no evidence presented at trial of "what the duties of an elementary school principal are or may be. There was no evidence that the meeting with Appellant constituted an official duty of an elementary school principal. In fact[,] there was evidence that the problem Appellant had was not one that the school, or at least Dawn Jones, could help him with." Therefore, he posits, the evidence did not support the aggravating factor of the offense. We disagree.

Appellant was indicted for "intentionally and knowingly threaten[ing] Dawn Jones . . . with imminent bodily injury by threatening to cut her with a knife, and used or exhibited a deadly weapon, namely a knife, during the commission of the assault, and the defendant knew that the complainant was a public servant, namely principal of Post Elementary School, and that the complainant was lawfully discharging an official duty, namely meeting with Defendant in her school office regarding Defendant's son who was a student at the school . . . ."

"Lawfully discharging an official duty" is undefined. When analyzing the sufficiency of the evidence, undefined statutory terms "are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Dunham v. State*, 666 S.W.3d 477, 484 (Tex. Crim. App. 2023). Further, appellate courts "can consult dictionary definitions, . . . read words in context . . . apply rules of grammar . . . [and] may also turn to case law—both state and federal—for assistance in interpreting the meaning of an undefined term." *State v. Bolles*, 541 S.W.3d 128, 139 (Tex. Crim. App. 2017). Lastly, reasonable inferences from the evidence presented are permissible. *See Evans v. State*, No. 14-01-01100-CR, 2002 Tex. App. LEXIS 5812, at *4–5 (Tex. App.—Houston [14th Dist.] Aug. 8, 2002, pet. ref'd)

8

(mem. op., not designated for publication) (finding a reasonable fact finder could have determined beyond a reasonable doubt the officer was lawfully discharging his duties at the time of the assault when the evidence showed the officer and his partner were on duty, working patrol and wearing uniforms, and dispatched to investigate a reported disturbance).

In the case before us, the evidence shows Jones was the principal of Post Elementary School, an institution that educated 350 students and had over 70 employees. Jones had, on previous occasions, called Appellant concerning his son who was a student at the school. She had, in fact, recently called Appellant about his son's absences from school. Two days before the assault, Jones had talked with Appellant about his son's absences and his son's safety. The day of the assault, Appellant came onto school property and went to the front desk where Jones's office was located. Children and school employees were present. When Appellant became loud, Jones invited him into her office, so children and employees did not witness the event. She closed the door to her office when Appellant began cursing for the same reason, i.e., to protect the children and employees from Appellant's behavior. The evidence also shows that during the meeting, Appellant asked her to get his son out of class. She declined to do so. In addition, Appellant was seeking Jones's assistance regarding a CPS case involving his son and she explained to him what the school was and was not able to do in that situation. It was reasonable to infer from this evidence that Jones was, at all times during this interaction, acting as the principal of the school.

Considering all of the circumstances of this encounter, as well as applying the law noted herein, we find the evidence sufficient to show Jones was lawfully discharging her

official duties as principal at the time of the offense. *See In re P.N.*, No. 03-04-00751-CV, 2006 Tex. App. LEXIS 6878, at *10–11 (Tex. App.—Austin Aug. 4, 2006, no pet.) (mem. op.). (finding fact finder was rationally justified in determining a school teacher was lawfully discharging an official duty when a student assaulted him). We accordingly overrule Appellant's issue.

## CONCLUSION

Having overruled Appellant's issues on appeal, we affirm the judgment of the trial court.

Alex Yarbrough
Justice

Do not publish.

10